CREST PLUMBING AND HEATING COMPANY *v.*
PAUL DiLORETO
(3101)

MAC'S CAR CITY, INC. *v.* PAUL S. DiLORETO ET AL.
(3102)

HOWARD ASAL CONSTRUCTION COMPANY, INC. *v.*
PAUL S. DiLORETO ET AL.
(3103)

DUPONT, C. J., BORDEN and SPALLONE, Js.

Argued May 8—decision released September 22, 1987

*Edward Pontacoloni,* for the appellant (named defendant).

*Raymond G. LeFoll,* for the appellee in the first case (plaintiff Crest Plumbing and Heating Company).

*Nicholas E. DeNigris,* for the appellee in the second case (plaintiff Mac's Car City, Inc.).

*James J. Scalise,* for the appellee in the third case (plaintiff Howard Asal Construction Company, Inc.).

SPALLONE, J. This is a consolidated appeal involving three separate contract actions against a common defendant.[1] The trial court rendered judgment for the plaintiff in each of the actions, and the defendant appealed from each of the judgments. We find error in the second case and no error in the first and third cases.

The following facts are not in dispute and are common to all three appeals. The defendant is a partner in a general partnership (D & T Construction Company) which was, at the time of the matter in question, engaged as a general contractor. The plaintiff in the first case, Crest Plumbing and Heating Company

---

[1] While two of the plaintiffs brought suit against other defendants in addition to Paul DiLoreto, only DiLoreto defended the cases at trial, and only DiLoreto has appealed.

(Crest), is a plumbing contractor. The plaintiff in the second case, Mac's Car City, Inc. (Mac's), is a new and used car dealership in Berlin, Connecticut. The plaintiff in the third case, Howard Asal Construction Company, Inc. (Asal), is a paving contractor.

Pursuant to a written building construction contract dated October 5, 1978, the defendant agreed to construct a building to house Mac's dealership. Thereafter, the defendant entered into agreements with Crest and Asal to perform subcontracting work on that project. Disputes arose between the defendant and each of the plaintiffs which ultimately resulted in each plaintiff filing a lawsuit against the defendant. The defendant filed an answer and counterclaim in each of the three lawsuits. All three cases were consolidated and tried together to the court. After trial, the court, *Shaughnessy, J.,* rendered judgment for the plaintiff on both the complaint and the counterclaim in each case, from which judgments the defendant has filed three appeals. The appeals were consolidated and this opinion will serve all three.

## APPEAL NO. 3101–CREST PLUMBING & HEATING CO. *v.* DiLORETO

Pursuant to a written contract between the defendant and Crest dated November 3, 1978, Crest agreed to perform plumbing work on the project. Upon completing the required performance, the defendant was indebted to Crest in the amount of $2090, which he refused to pay. Accordingly, Crest commenced a contract action against the defendant to recover the unpaid balance. As a result of the suit brought by Mac's against the defendant, the defendant counterclaimed against Crest seeking damages for alleged unfinished and improper work. After a trial, the trial court rendered judgment for Crest on the complaint and on the defend-

ant's counterclaim. The court awarded Crest the claimed $2090, plus interest equal to $752.40, for a total judgment of $2842.40.

The defendant has appealed from the judgment, claiming that the trial court erred in concluding that Crest performed its agreement with the defendant. The defendant asserts that the court's conclusion was inconsistent with its conclusion in *Mac's Car City, Inc.* v. *DiLoreto*, where the court found that the plumbing work was not done in accordance with the agreement between Mac's and the defendant.

We find no merit in this contention. The defendant has failed to establish that Crest's agreement with the defendant was identical in relevant part with the defendant's agreement with Mac's. Without such proof, we cannot find that the court's conclusions in the two cases were inconsistent. See also *Ryan* v. *Mill River Country Club, Inc.*, 8 Conn. App. 1, 5–6, 510 A.2d 462 (1986). The court's conclusion that the plaintiff properly performed its obligation under the contract is supported by the evidence and is not clearly erroneous. Practice Book § 4061; *Pandolphe's Auto Parts, Inc.* v. *Manchester*, 181 Conn. 217, 221–22, 435 A.2d 24 (1980); *Buddenhagen* v. *Lugue*, 10 Conn. App. 41, 45, 521 A.2d 221 (1987). Consequently, we find no error.

### APPEAL NO. 3102–MAC'S CAR CITY, INC. *v.* DILORETO

This appeal involves a suit for breach of a contract for the construction of premises to be used by Mac's as an automobile dealership. The contract was prepared by the defendant and essentially provided that the defendant would construct, ready to use, a building and parking facilities to accommodate a functioning automobile dealership. The construction was to be completed within 100 days and called for total payment of

$256,000. There were two approved change orders, bringing the total due for the job to $263,380. Up to the time of the defendant's default, the defendant had been paid $236,400, plus $4000 to a subcontractor for a total of $240,400.

Construction delays eventually resulted in the defendant's default under the contract. Consequently, Mac's completed the construction on its own. On June 5, 1980, Mac's commenced a breach of contract action against the defendant, alleging incomplete and improper workmanship. The defendant counterclaimed for the balance due him under the contract.

After a trial, the court rendered judgment in favor of Mac's on its complaint and on the defendant's counterclaim. The court awarded cost of completion damages in the amount of $46,469.33, inclusive of attorney's fees equal to $6750, plus interest from July 1, 1979 to March 1, 1984, for a total award of $63,817.88.

The defendant has appealed and has claimed that the trial court erred (1) in determining the plaintiff's damages, (2) in awarding the plaintiff prejudgment interest, (3) in rejecting the defendant's counterclaim for the cost of extra work performed, (4) in refusing to admit into evidence the periodic progress reports of the construction mortgagee's engineer, and (5) in failing to conclude that the measure of the defendant's performance, and therefore his right to payment, was established by the approval of the periodic payment requisitions. We agree with the defendant's fourth claim of error, that the court erred in refusing to admit the reports of the mortgagee's project engineer as business records under General Statutes § 52-180.

The facts pertinent to this claim are as follows. American National Bank, the construction mortgagee,

entered into an agreement[2] with Alfred Wilner, Inc., a corporation engaged in the business of construction management. Pursuant to this agreement, Alfred Wilner, Inc., periodically sent an engineer or architect employed by it to the job site to make an inspection of the work in progress in order to determine if the work conformed with the approved plans and specifications governing the defendant's performance. During the course of construction, Alfred Wilner, Inc., sent six reports to the mortgagee bank. The bank, through the testimony of one of its officers, stated that it was in the bank's general course of business to keep a record of the reports and that the reports were of field

---

[2] The agreement provided, in pertinent part, that Alfred Wilner, Inc., would provide services as follows:

"During construction the job will be visited no less than once a month by an engineer or architect in our employ. A written report will be prepared each month that includes the following:

"1. A trade-by-trade description of the job indicating the status of completion.

"2. Confirmation by our inspector that, to the best of our knowledge, the work is proceeding in general accordance with approved plans and specifications based on our periodic visits to the site. In the absence of such compliance known to us, we may recommend corrective action.

"3. Examination of test reports available to us affecting such items as compaction of fill materials, structural steel, pile logs, concrete strengths, etc. Substantial deviation from allowable values will be brought to the lender's and contractor's attention and corrective measures may be suggested.

"4. The percentage of completion of the job is reported. If desired, the contractor's monthly requisition can be reviewed. The time of the inspection will be coordinated with the lender and borrower so that draw schedules can be met.

"5. A set of Polaroid or color progress photographs.

"6. Such other information as we deem to be in the lender's best interest such as weather affecting project progress, strikes, etc. When construction of the building is completed, we will perform a final inspection. If the results so indicate, we will issue a letter stating that to the best of our knowledge work was accomplished in general accordance with the approved plans and specifications based on our periodic visits to the site and terms of our contract evidenced by local documentation such as certificates of occupancy, fire underwriter certificates, etc. as are available to us."

inspections made by an engineer employed by the bank. When the defendant attempted to introduce the reports into evidence, the trial court sustained the plaintiff's objection, holding that because the reports were not business records of the bank but were business records of someone else, they were inadmissible under General Statutes § 52-180.[3] We disagree.

---

[3] The pertinent portions of the testimony and rulings by the court are as follows:

Direct Examination by Mr. Pontacoloni:

"Q. Mr. Schmeltz, could you tell the Court please your occupation?

"A. Yes. I'm the manager of portfolio administration for the Installment Loan Department at American National Bank.

"Q. And in that capacity, Mr. Schmeltz, are you familiar with the loan of American National Bank to Mac's Car City in December of 1978?

"A. Yes

"Q. And what is the basis of that familiarity?

"A. Reviewing the documentations in the file.

"Q. Were you employed by the bank at that time?

"A. No, I was not.

"Q. But you have had an opportunity to review the bank's file with respect to that loan transaction?

"A. Yes, I have.

"Q. And in the course of your review did you familiarize yourself with the documents on record?

"A. To a certain degree, yes.

"Q. And would you tell the Court please is the bank's general course of business to keep a record of those documents that you found on file?

"A. Yes.

"Q. Mr. Schmeltz, I'm going to show you this collection of papers here and I ask you if you can identify those papers?

"A. They are documents from the mortgage files. There are some reviews by the engineer, there's some disbursement records and there's an appraisal of the property dated June 17, 1980.

"Q. Excuse me, Mr. Schmeltz.

"A. Yes.

"Q. Just one moment. I hate to interrupt. I believe this was picked up accidently. Basically these items that you're now holding—

"A. There are memos in the file, field inspections by the engineer.

"Q. When you say the engineer, what engineer?

"A. Alfred Wilner.

"Q. And do you know what his involvement was with this transaction?

"A. To my knowledge he would do a physical inspection of the property prior to releasing of funds on the construction mortgage.

The business record exception to the hearsay rule is codified in General Statutes § 52-180. Section 52-180 (a) provides that "[a]ny writing or record . . . made as a memorandum or record of any act, transaction, occurrence or event, shall be admissible as evidence of the act, transaction, occurrence or event, if the trial judge finds that it was made in the regular course of any business, and that it was the regular course of the business to make the writing or record at the time of the act, transaction, occurrence or event or within a reasonable time thereafter." In the present case, the trial court excluded the engineer's reports because they were prepared by a party other than the organization whose business records they were purported to be. There is no requirement in § 52-180, however, that the documents must be prepared by the organization itself to be admissible as that organization's business records.

"Q. And those were his reports with respect to the inspections that he made?

"A. Yes.

"Mr. Pontacoloni: Your Honor, at the present time I'm going to move for the admission of the documents as business records and for the submission of copies in lieu of the originals on the basis of the evidence that has been presented.

[objection interposed]

"The Court: Were these records made by the bank?

"Mr. Pontacoloni: They were made by an agent of the bank, Your Honor.

"The Court: That's not quite what I asked you. I said were they made by the bank?

"Mr. Pontacoloni: To that extent I guess I can only say they were made by an agent of the bank. He was employed by the bank for the purposes of compiling these records.

"The Court: You mean they hired some other business to do something for them?

"Mr. Pontacoloni: Yes, your Honor.

"The Court: Well, now, that doesn't make it a record of the bank. It makes it the record of some other business, doesn't it?

"Mr. Pontacoloni: Technically speaking, your Honor, I believe that it does.

"The Court: Objection sustained.

"Mr. Pontacoloni: May I also have an exception, your Honor?

"The Court: Why not."

All that is required is that it be in the regular course of the business to make the "writing or record." We believe the keeping of a report in a bank's file that serves as a basis of whether the bank will pay out money under a loan agreement satisfies the statutory requirement of "record" and that such a record could reasonably be found to have been made in the course of the bank's business. We hold that the trial court erred in holding that the reports Alfred Wilner, Inc., made to the bank were inadmissible as business records of the bank because they were business records of another organization.

We do not hold that the trial court could not have found that the keeping of such reports was not in the bank's general course of business. See *Orzechowski* v. *Higgins,* 146 Conn. 463, 466, 152 A.2d 510 (1959). The court, however, based its ruling on the fact that the record was the business record of a party other than the bank. The reason given by the court was erroneous, and the record does not clearly establish an alternative ground of inadmissibility on which the trial court's ruling should be sustained. Further, had the report been admitted, the court was under no obligation to accept the opinions expressed therein. The trier may accept or reject the testimony of a witness, offered by one party or the other, expert or otherwise, in whole or in part. *Smith* v. *Smith,* 183 Conn. 121, 123, 438 A.2d 842 (1981); *Richard* v. *A. Waldman & Sons, Inc.,* 155 Conn. 343, 348, 232 A.2d 307 (1967); *Filipetti* v. *Filipetti,* 2 Conn. App. 456, 459, 479 A.2d 1229, cert. denied, 194 Conn. 804, 482 A.2d 709 (1984). The trial court, however, by erroneously excluding the evidence, was denied the opportunity to determine what weight should be given the evidence.

We cannot say that the failure to admit the reports was harmless error because, in content, the reports seem to contradict the testimony and other evidence

offered by the plaintiff. While the plaintiff claims that the reports were reports of the bank or its agent, and were not binding on the parties, this contention misses the point. The relevancy of the reports depends not on whether they were binding on the parties, but on whether they provided probative evidence as to whether certain of the contract specifications had been properly performed. The plaintiff does not contend that the engineer's reports are unrelated to the disputed contractual matters in this case.

Because we must remand for a new trial, we need not discuss the other claims of error made by the defendant.[4]

## APPEAL NO. 3103–HOWARD ASAL CONSTRUCTION CO. v. DiLORETO

Pursuant to a contract dated April 24, 1979, Asal agreed to pave 40,000 square feet at a price of $10,000 and to provide additional paving as requested at $.22 per square foot. Asal also orally agreed to rent equipment to the defendant and provide top soil as needed. Upon completion, the defendant was indebted to Asal in the amount of $8384.25, which he refused to pay.

Asal brought suit against the defendant for breach of contract. The defendant denied liability for any ser-

---

[4] While we do not address the remaining claims of error, we note that the plaintiff has conceded, and we agree, that the trial court erred in its computation of the interest award. It is evident from the trial court's memorandum of decision that interest was awarded to the plaintiff at a rate of 8 percent per annum for the fifty-six month period from July 1, 1979, to March 1, 1984. During the period from July 1, 1979, through September 30, 1979, however, the plaintiff was entitled to interest at only 6 percent per annum. See General Statutes § 37-3a; Public Acts 1979, No. 79-364, § 2. Furthermore, we also note that the plaintiff has conceded that the trial court erred in the calculation of damages, stating that the damage award plus interest should be modified to reflect damages of $45,183.43 and not $46,469.33.

vices provided during June of 1979. As a result of the suit brought by Mac's against the defendant, the defendant counterclaimed against Asal for improper workmanship.

After a trial, the court rendered judgment for the plaintiff on the complaint and on the defendant's counterclaim. The court awarded Asal damages of $8034.25, plus interest from June 1, 1979 to March 1, 1984, at 1 percent per month pursuant to the contract, and attorney's fees equal to $4400, for a total judgment of $16,933.43. Subsequently, the parties agreed to reduce the interest by $160.69 which resulted in a final judgment of $16,772.74.

The defendant claims that the trial court erred (1) in imposing liability upon the defendant for additional paving services and for equipment and materials furnished during June, 1979, (2) in awarding Asal prejudgment interest, and (3) in awarding Asal attorney's fees. We find no merit in these claims.

The defendant's first claim of error implicates the factfinding function of the trial court. The record supports the findings of facts and the legal conclusions drawn by the trier. We will not retry the case. *Cookson* v. *Cookson,* 201 Conn. 229, 242–43, 514 A.2d 323 (1986); *Pandolphe's Auto Parts, Inc.* v. *Manchester,* supra.

In his second claim, the defendant contends that the trial court erred in awarding the plaintiff prejudgment interest. "The allowance of interest as an element of damages is . . . primarily an equitable determination and a matter lying within the discretion of the trial court." *Bertozzi* v. *McCarthy,* 164 Conn. 463, 467, 323 A.2d 553 (1973). We find no abuse of discretion here. See *H. B. Toms Tree Surgery, Inc.* v. *Brant,* 187 Conn. 343, 348, 446 A.2d 1 (1982); *Wells Laundry & Linen Supply Co.* v. *Acme Fast Freight, Inc.,* 138 Conn. 458, 463, 85 A.2d 907 (1952).

Nor can we find error in the court's calculation of the interest award. The defendant asserts that the court erred by awarding interest on the entire judgment at a rate of 1 percent a month, the amount provided by the written contract. The defendant contends that because the plaintiff performed work for the defendant under both an oral and a written contract, the court could only legally award interest at 1 percent a month on those damages that resulted from a breach of the written contract, and could only award the lower statutory rate of interest on those damages that resulted from a breach of the oral contract. See General Statutes § 37-3a. The trial court, however, never specified whether any of the $8032.25 damage award resulted from a breach of the oral contract.[5] It is the appellant's responsibility to provide an adequate record for review. Practice Book § 4061; *Thiel Realty Corporation* v. *Culligan Water Conditioning Co.*, 9 Conn. App. 191, 193, 517 A.2d 1052 (1986). Without an adequate record specifying whether any part of the damages award was attributable to the oral contract, we cannot say that the trial court's interest award was clearly erroneous.

---

[5] In response to the defendant's motion for articulation, the trial court articulated the factual basis for its award of $8034.25 as follows: "[I]n reaching this conclusion the court relied on the testimony of Howard Asal and the exhibits before the court. The work performed consisted of paving work done under a written contract and rental of equipment, top soil, etc. requested orally and supported by signed slips for each item rented and/or delivered. These totaled $16,384.25. . . . Toward this, payments of $8000 were made leaving $8384.25 outstanding. From this item was deducted $350, disputed by the defendant, leaving a balance due of $8034.25." Although the court found that the defendant paid $8000 toward the total balance owed on both the oral and written contracts, it did not specify towards which contract this sum was attributable. It is possible that the trial court could have found that this sum covered the balance owed under the oral contract and that the $8034.25 damage award was attributable solely to a breach of the written contract. We cannot determine, therefore, whether any portion of the trial court's damage award was attributable to the oral contract.

In his third claim, the defendant contends that the trial court erred in its award of attorney's fees. The trial court based its award on a contractual provision providing that "all costs of collection, including attorney's fees, will be added, if necessary to place this account for collection." At trial, the plaintiff introduced evidence as to reasonable attorney's fee for an attorney in the relevant geographical area, but introduced no evidence as to the actual fees incurred. The defendant claims that the court erred in awarding attorney's fees in the absence of such evidence.

We agree that the trial court could reasonably construe the term "attorney's fees" in the parties contract as a provision for "reasonable attorney's fees," thereby permitting it to base its award on factors other than the actual expense incurred by the prevailing party. In cases where there is a contractual provision allowing "reasonable attorney's fees," our Supreme Court has required that there be an evidentiary showing of reasonableness, with the award to be based on a number of considerations not limited to the actual fee incurred by the party. See *Bizzoco* v. *Chinitz*, 193 Conn. 304, 310, 476 A.2d 572 (1984); *Appliances, Inc.* v. *Yost*, 186 Conn. 673, 680, 443 A.2d 486 (1982); *Piantedosi* v. *Floridia*, 186 Conn. 275, 279, 440 A.2d 977 (1982). We construe the term "attorney's fees" as an award for "*reasonable* attorney's fees" in this case because the term "reasonable" is implied by law even when it is absent in the contractual provision. Cf. *Storm Associates, Inc.* v. *Baumgold*, 186 Conn. 237, 246, 440 A.2d 306 (1982) (contract clause providing for award of attorney's fees "incurred" requires reimbursement of actual expenses, provided amount is reasonable). While the defendant claims that an award of attorney's fees not based on the plaintiff's actual expenses could result in excess damages to the plaintiff, the plaintiff's right to recovery derives from its contract and not from a claim

for damages. *Storm Associates, Inc.* v. *Baumgold,* supra, 245; *Litton Industries Credit Corporation* v. *Catanuto,* 175 Conn. 69, 76, 394 A.2d 191 (1978). In such cases, the method of determining damages used by the trial court is permissible. *Piantedosi* v. *Floridia,* supra.

In Appeal No. 3101, *Crest Plumbing & Heating Co.* v. *DiLoreto,* there is no error.

In Appeal No. 3102, *Mac's Car City, Inc.* v. *DiLoreto,* there is error, the judgment for the plaintiff on both the complaint and the counterclaim is set aside and the case is remanded for a new trial.

In Appeal No. 3103, *Howard Asal Construction Co.* v. *DiLoreto,* there is no error.

In this opinion the other judges concurred.