**KYSOR INDUSTRIAL CORPORATION,**
Plaintiff,

v.

**MARGAUX, INC., Defendant,**

and

**Dover Diversified, Inc., Defendant–Intervenor.**

**Civil Action No. 94C–12–196–JOH.**

Superior Court of Delaware,
New Castle County.

Submitted: Jan. 10, 1996.
Decided: Jan. 31, 1996.

Wayne N. Elliott, and Ronald A. Brown, Jr., of Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, for plaintiff.

Richard D. Heins, of Ashby & Geddes, Wilmington, for defendant.

Martin P. Tully, and Elaine C. Reilly, of Morris, Nichols, Arsht & Tunnell, Wilmington, and Thomas C. Ewing of Foley & Lardner, Milwaukee, Wisconsin, for defendant-intervenor.

## OPINION

HERLIHY, Judge.

This is Kysor Industrial Corporation's [Kysor] renewed motion for summary judgment.

### PROCEDURAL POSTURE

Kysor filed this action on December 19, 1994, seeking damages for an alleged breach of contract on the part of Margaux, Inc. [Margaux]. Pursuant to a letter of intent between Kysor and Margaux, the latter would pay a $300,000 termination fee plus expenses upon the occurrence of one or more of the stated triggering events.[1] After the Kysor/Margaux letter was signed, Margaux entered into an agreement to sell and did sell its assets to Dover Diversified, Inc. [Dover], now Margaux's parent company.

On March 22, 1995, Kysor filed a motion for summary judgment. On April 11, 1995, this Court denied the motion without prejudice to renew it following additional discovery. On May 2, 1995, there was a stipulation providing that by June 23, 1995, discovery would be cutoff and briefing on Kysor's renewed motion for summary judgment would occur during July and August 1995. On May 19, 1995, this Court denied Dover's motion to intervene as of right, but granted Dover's motion for permissive intervention. Dover and Margaux have submitted a joint brief. The Court also asked that the summary judgment briefing address whether Dover can assert any defenses different from the defenses Margaux asserts.

### FACTS

■ Before Dover acquired Margaux, there existed three prominent competitors in the refrigerator market in Georgia: Margaux, Kysor and Phoenix Refrigeration Systems, Inc. [Phoenix], a wholly owned subsidiary of Dover. Margaux and Phoenix's rivalry not only stemmed from competing in the industry, but also from a personal conflict between Margaux's CEO, Stephen Clark [Clark] and Phoenix's president, Grant Brown [Brown].[2] Years earlier, Margaux had acquired a company of which Brown was the principal. Two years later, Clark terminated Brown. Subsequent to Brown's termination, however, Margaux sued Brown alleging theft and unfair com-

---

1. The "events" in the Certain Undertakings portion of the Letter of Intent provide that Margaux is required to pay Kysor $300,000, plus expenses if any one of the three following situations occur: (1) if Margaux breaches its undertaking to negotiate only with Kysor for 120 days after August 31, 1994, or (2) if Margaux's board does not approve of the transaction with Kysor contemplated by the letter of intent, or (3) if Margaux's stockholders do not approve of the proposed Kysor/Margaux transaction.

2. Facts regarding personal rivalry between Brown and Clark are taken from the affidavit of Margaux's vice president of finance, Ray Tolcher, who was vice president from 1988 to March 1995. Uncontroverted facts purported in affidavits may be taken as true. *Plant v. Catalytic Constr. Co.*, Del.Super., 287 A.2d 682 (1972), *aff'd*, Del.Supr., 297 A.2d 37 (1972).

petition. After his termination, Brown started Phoenix and competed with his old employer and rival.

Margaux exited Chapter 11 bankruptcy in 1989[3] and at the request of the creditors' committee, Clark attempted to locate a purchaser for Margaux. In 1992, Phoenix, acting through Brown, made a number of attempts to purchase Margaux. Clark and Margaux's board refused to entertain this offer. In November 1993, Dover acquired Phoenix. Brown continued to run Phoenix until his death in the Fall of 1994.

In May of 1994, as Margaux's financial condition worsened, Phoenix once again tried to acquire Margaux. Brown corresponded with members of the creditors' committee regarding the acquisition of Margaux but its board thought the proposal to be without merit. Both Clark and Leiv Lea, Margaux's chief financial officer and director, believed the proposals to be merely an attempt to gain a competitive advantage over Margaux. Dover than became fully aware of the history between Clark and Brown and decided to make the bid itself, rather than through its subsidiary, Phoenix. Dover's president, Jerry Yochum, wrote Clark making a formal offer to purchase all of Margaux's assets for $7,107,800 in cash.[4] Clark notified Dover that its bid would be considered at Margaux's August board meeting. Clark contacted Kysor to elicit a bid from them and informed Kysor that he had no intention of considering Dover's bid.

Throughout July and August 1994, Clark met exclusively with Kysor representatives and allowed them access to Margaux's financial information. Clark took the position that Kysor was the only legitimate offer without even meeting with Dover. Three days prior to Margaux's August board meeting, Kysor sent Margaux a letter of intent which did not contain the no-shop and termination fee provisions on which Kysor bases this action and failed to state that it was non-binding.

On August 25, 1995, Margaux's board rejected the Dover bid and, based on Kysor's August 22, 1995 letter of intent, decided to pursue the transaction with Kysor. Before rejecting Dover's offer, the board made no attempt to discover whether Dover was willing to negotiate the terms of its bid. Moreover, Margaux's board did not notify Dover of the rejection.

Peter Gravelle, Kysor's chief operating officer, and Terry Murphy, Kysor's chief financial officer phoned Clark and stated that Kysor was adding additional terms to the letter of intent. These additional terms included the no-shop and termination fee clauses and a statement claiming that the letter was non-binding. Clark did not engage in any dialogue with Kysor regarding the meaning of the no-shop and termination fee provisions nor did he have the provisions reviewed by counsel. The Margaux board did nor formally meet to authorize Clark to sign the August 31, 1995 letter containing the no-shop and termination fee provisions. However, Clark testified that he checked with the directors about these provisions and received approval of the new provisions.

The provisions of the August 31 letter of intent pertinent to this case stated:

*CERTAIN UNDERTAKINGS*

1. For a period of 120 days from the date of this letter, Margaux shall not, directly or indirectly, solicit or entertain offers from, negotiate with or in any manner encourage, discuss, accept or otherwise consider any proposal of any person other than Kysor to acquire capital stock of Margaux, or any of its assets or business, in whole or in part, regardless of the form of transaction (other than sales of inventory in the ordinary course).

2. In the event that Margaux breaches its undertakings under the foregoing paragraph of this section, if the Board of Directors of Margaux fails to approve the contemplated transactions or withdraws its approval, or if the transactions are not approved by Margaux's stockholders, Margaux shall promptly: (a) reimburse Kysor

---

3. The record does not show when it filed for bankruptcy protection.

4. Dover communicated to Margaux that no financing would be required and Dover had sufficient cash reserves to close the transaction promptly.

for all expenses incurred in connection with the transaction, including without limitation, its due diligence expenses and the fees and expenses of its professional advisors, and (b) pay as liquidated damages to Kysor a termination fee equal to Three Hundred Thousand Dollars ($300,000).

3. Pending execution of a definitive purchase agreement, Margaux shall conduct its business operations only in the ordinary and usual course and shall not engage in any extraordinary transaction without Kysor's prior written consent.

4. Except as provided in paragraph 2 of this section, each party shall be responsible for and bear all of its own costs and expenses incurred in connection with the proposal transaction.

*CONCLUSION*

The purpose of this letter is to state our present intentions with respect to the proposed transaction. Except for the provisions set forth under the heading "Certain Undertakings" above (as to which provisions this letter constitutes our agreement), this letter does not constitute a legally binding agreement between us or obligate either of us with respect to the proposed transaction and no such agreement or obligation shall exist unless and until we execute a mutually acceptable definitive purchase agreement.

Dover continued to pursue the acquisition of Margaux after Margaux signed the revised letter of intent with Kysor. Tom Bell, Dover's vice president, wrote to Clark explaining that Dover's previous offer remained open and Dover would consider increasing its offer. Clark never responded to Dover. Clark never made any attempt to determine the validity of Dover's offer.

On October 25, 1994, Dover sued Margaux in the Court of Chancery alleging that Clark and Margaux's other directors had breached their fiduciary duties by refusing to negotiate with Phoenix and Dover and by not providing them with the financial information which was freely given to Kysor. Chancery ruled that Dover's request for preliminary relief was premature because Kysor and Margaux had not yet entered into a formal transaction. That Court stated that "it would not be

prudent for directors who have not preformed any market check in advance, to enter into an agreement that did not have a fiduciary out in circumstances of this kind." *Dover Diversified, Inc. v. Margaux, Inc.*, Del.Ch., C.A. No. 13829, Allen, C. (November 4, 1994).

When Dover sued Margaux, the latter issued a press release stating, in pertinent part,

Margaux has agreed that if the transaction is not approved by its stockholders or if Margaux takes certain specified actions in connection with any other offer, Margaux will reimburse Kysor for certain expenses it incurred in the transaction and pay a termination fee of $300,000.

In an Securities and Exchange Commission filing several days later, Margaux repeated this statement.

At a time which is not exactly clear, Kysor offered to purchase Margaux's assets for $3.6 million and assume liabilities of around $7 million. While the records supplied to the Court are slightly fuzzy on this offer, it is uncontroverted that Kysor made such an offer. The record also shows Kysor undertook an extensive due diligence review in contemplation of making its offer.

On November 8, 1994, Dover made an offer to purchase Margaux for $11 million. Even after receiving this offer, Clark continued to favor a transaction with Kysor. After Clark failed to persuade Kysor to increase its bid, Margaux's board accepted Dover's offer. Dover's offer was raised to $11.5 million. It was to purchase Margaux's assets and very limited liabilities—warranties. According to Margaux's proxy statement to its shareholders seeking approval of the Margaux/Dover asset purchase agreement, the agreement provided for a termination fee. The fee was based on a percentage of the purchase price, namely, 2.15 percent of $11.5 million, which equals $247,000. In the event the deal was not consummated, Margaux was to be also liable for "expenses" up to $50,000.

Margaux and Dover entered into a purchase agreement on December 9, 1994. In another SEC filing in February 1995, Margaux stated it agreed it would pay Kysor

certain expenses and a termination fee of $300,000. Margaux's shareholders approved of Dover's asset purchase in March 1995 and the deal was closed on March 6, 1995. Thereafter, Margaux was dissolved as a separate corporation.

Kysor has brought this breach of contract action seeking $300,000 and reimbursement for certain additional expenses totaling $216,396.28.

## PARTIES' CONTENTIONS

Margaux/Dover[5] contend that the August 31, 1994 letter of intent is not a contract. The basis of that contention is that the letter of intent is not supported by consideration. Their agreement also is that there are genuine issues of material fact present regarding whether there was consideration and, thus, summary judgment is inappropriate.

Kysor responds by arguing that there was consideration and that there are no genuine issues of material fact present which would prevent summary judgment on the issue of whether there was and is a contract. Assuming there were no consideration, Kysor argues there is promissory estoppel and that it can substitute for consideration. Kysor also argues that by its press release and SEC filings, Margaux waived any infirmities and thereby bound itself.

If there is a contract, Margaux then argues that the letter of intent was entered into in violation of "public policy". The public policy violation is that the Margaux board breached its fiduciary duties by agreeing to the particular no-shop and termination fee provisions which are contained in the August 31 letter. Margaux contends these provisions render the letter unenforceable barring Kysor's recovery.

Kysor disputes the contention that Margaux's board breached its fiduciary duties. Further, it argues that this defense is one only to be heard in the Court of Chancery and that this Court cannot entertain it. Margaux responds that this Court does have jurisdiction to entertain the defense of the contract being in contravention of public policy.

Margaux additionally argues that the $300,000 termination fee in this case amounts to an unenforceable penalty rather than recoverable liquidated damages. Further, Margaux contends that there is a material factual issue of whether $300,000 represents a reasonable forecast of just compensation—making summary judgment impermissible. Kysor responds that there is no factual issue and that the termination fee provision is enforceable.

Finally, as to the claim for expenses, Margaux argues that Kysor cannot recover expenses on summary judgment. First, it claims the "expenses" language in the letter of intent is ambiguous and that there needs to be further factual evidence concerning what kind of expenses were intended by the parties to be reimbursable. It goes on to contend whether all of the expenses which Kysor claims are recoverable which, in turn, raises another genuine issue of material fact. Not surprisingly, Kysor disagrees with all of these contentions.

## STANDARD OF REVIEW

■ In order for a party to be entitled to summary judgment, that party has the burden of showing there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law. *Moore v. Sizemore*, Del.Supr., 405 A.2d 679, 680 (1979). The Court must view the evidence in the light most favorable to the non-moving party. *McCall v. Villa Pizza, Inc.*, Del. Supr., 636 A.2d 912, 913 (1994). The motion for summary judgment will be denied if the Court finds any genuine issue of material fact. *Pullman v. Phoenix Steel Corp.*, Del.Super., 304 A.2d 334, 335 (1973).

■ If a motion for summary judgment is properly supported, the burden shifts to the non-moving party to demonstrate that there are material issues of fact. *State v. Regency Group, Inc.*, Del.Super., 598 A.2d 1123, 1129 (1991).

---

5. Hereafter, even though Margaux and Dover filed a joint answering brief, the Court will use only Margaux's name.

## DISCUSSION

### Contract Issue

The initial inquiry is whether there was a contract between Kysor and Margaux. Margaux argues there was no consideration and that the August 31 letter was a "unilateral contract", *i.e.*, no contract. Implicitly acknowledging that the doctrine of promissory estoppel can substitute for consideration and is arguably present or can be substituted for consideration, Margaux contends genuine issues of material fact prevent invocation of promissory estoppel in this case.

■ This Court finds as a matter of law that a contract was reached between Kysor and Margaux. Interpretation of contracts is a determination of law. *Hudson v. State Farm Mut. Ins. Co.*, Del.Supr., 569 A.2d 1168, 1170 (1990).

■ In short, what Kysor and Margaux sought to do was to not bind Kysor to buy Margaux but to allow Kysor to examine Margaux in detail to see if it wanted to make an offer to buy. Before undertaking that step, if certain circumstances arose, Margaux promised to pay Kysor a $300,000 termination fee and expenses. At its inception, Kysor was not obligated to do anything, not even bound to conduct a due diligence examination. That, of course, is the crux of Margaux's argument that the August 31, letter lacked consideration and was "unilateral".

The differences between a unilateral contract and a bilateral contract, as those terms are now commonly used, lie both in the operative acts of the parties and also in the legal relations created thereby. A unilateral contract consists of a promise or group of promises made by one of the contracting parties only, usually assented to by the other. There are many cases in which such an assent is not required. A bilateral contract consists of mutual promises, made in exchange for each other by each of the two contracting parties. In the case of a unilateral contract, there is only one promisor. The legal result is that the promisor is the only party who is under an enforceable legal duty.

Williston on Contracts § 1.23.

■ What makes such a unilateral promise enforceable is either consideration or assent. *Id.* Here, Kysor assented to the terms of the letter of August 31. But, also in the Court's view, there was consideration to make a contract (leaving aside the other defenses for the moment). That consideration was created when Kysor actually began its due diligence review and gathered information whereby it placed itself in position to make its offer to buy Margaux. In effect, the contract became bilateral. *"Industrial America", Inc. v. Fulton Industries,* Del. Supr., 285 A.2d 412 (1971); Williston on Contracts § 1.23.

Margaux's argument that the "certain undertakings" portion of the August 31 letter is the only agreement is to unnecessarily isolate the provisions of the letter and the transaction being memorialized. More artful drafting may have prevented this portion of the controversy, such as a Kysor promise to undertake a due diligence review, for example, but Kysor's actual performance removed any doubts.

There is no factual dispute that Kysor did undertake a due diligence review. Various documents submitted show it was undertaken. These include Kysor's October 1994 document entitled "Proposed Acquisition of Margaux, Inc.", the time billed or sought for "expenses" for due diligence constructing a purchase offer, etc. While Margaux disputes Kysor's right to recover portions of the "expenses" claim, it does not contend that Kysor spent no time on due diligence or putting together the offer to buy. Again, in short, there is no factual dispute about substantial performance by Kysor.

Margaux has not argued that the August 31 letter of intent is unenforceable, or does not constitute a contract, because it was not formally approved by Margaux's board. Nor has it argued that Clark was without authority to sign it. As a matter of fact, the next defense to be considered by the Court is contrary to unenforceability on grounds of lack of authority because it contends Mar-

gaux's *board* acted contrary to public policy by agreeing to the letter.

Finding that there was a contract makes it unnecessary to address the issues of promissory estoppel and waiver. That finding necessarily moves the issue before the Court to Margaux's "public policy" defense.

### Public Policy

Margaux argues that the contract with Kysor is unenforceable because it violates public policy. It contends the violation arises because Margaux's board breached certain fiduciary duties by agreeing to the termination fee and no-shop provisions in the August 31 letter of intent. It says a breach of fiduciary duties is to act contrary to public policy. Margaux claims this Court has jurisdiction to entertain this defense.

Dover bought Margaux's assets. It did not buy any shares of Margaux's stock. There is no shareholder who is a party to this action.[6] This action is for an alleged breach of a contract which is an action at law.

Margaux cites a number of cases in support of its argument that by signing the letter of intent with Kysor under the circumstances which it did, the board, its board, violated its fiduciary duties. *Paramount Communications, Inc. v. QVC Network, Inc.*, Del.Supr., 637 A.2d 34 (1994); *Paramount Communications, Inc. v. Time, Inc.*, Del. Supr., 571 A.2d 1140 (1989); *Revlon, Inc. v. MacAndrews & Forbes Holdings*, Del.Supr., 506 A.2d 173 (1985); *Barkan v. Amsted Industries, Inc.*, Del.Supr., 567 A.2d 1279

(1989); *Aronson v. Lewis*, Del.Supr., 473 A.2d 805 (1984). It also claims that the recent case of *In re: Santa Fe Pacific Corp. Shareholder Litigation*, Del.Supr., 669 A.2d 59 (1995) slip op. supports its argument of breach of fiduciary duty and unenforceability of this contract.

■ In *QVC*, along with other defensive measures, the Supreme Court found that termination fee and no-shop provisions breached the fiduciary duties of Paramount's board. *QVC*, 637 A.2d at 49–50. But the duty owed by the directors was to the shareholders and the corporation. *Mills Acquisition Co. v. Macmillan, Inc.*, Del.Supr., 559 A.2d 1261, 1280 (1989). This duty extends to getting the highest price for the benefit of the shareholders. *Revlon*, 506 A.2d at 182.

■ Claims and causes of action for breaches of fiduciary duties by corporate boards fall within the exclusive jurisdiction of the Court of Chancery. *Harman v. Masoneilan International, Inc.*, Del.Supr., 442 A.2d 487, 498 (1982).

Margaux seeks to avoid the historic and cherished jurisdictional dividing line between this Court and Chancery on two grounds. One, it couches its defense as a contract made against public policy. Two, citing several decisions of this Court, it argues that this Court does have jurisdiction to entertain this defense.[7]

■ No-shop clauses are not *per se* invalid. *Revlon*, 506 A.2d at 184; *Cinerama, Inc.*

---

**6.** In the context of this case, this is another way of saying that Dover has no greater rights than Margaux.

**7.** *Delcollo Electric, Inc. v. Jack Eckerd Drug Co.*, Del.Super., C.A. No., 85L–AP–6, 1988 WL 67812, Babiarz, J. (June 28, 1988) (tenant contractor dispute; defendant claimed it exercised "bad business judgment"; Court found even if so, contract not invalid); *Collins v. Sussex Trust Co.*, Del.Super., C.A. No. 88C–JN–31, 1989 WL 70901, Lee, J. (June 15, 1989) (this Court can consider equitable estoppel, citing *Wilson v. American Ins. Co.*, Del.Supr., 209 A.2d 902 (1965); *Sponaugle & Sons, Inc. v. McKnight Const. Co.*, Del.Super., 304 A.2d 339 (1973); *National Fire Ins. Co. v. Eastern Shore Lab., Inc.*, Del.Super., 301 A.2d 526 (1973)). Compare *Hudson v. Wesley College, Inc.*, Del.Super., C.A.

No. 92C–10–012, 1993 WL 139004, Steele, J. (April 12, 1993) (claim alleging board violated fiduciary duties not cognizable in this Court); *Liquid Tank Services, Inc. v. Sullivan*, Del.Super., C.A. No. 92C–06–171–172, 1992 WL 240351, Balick, J. (September 18, 1992) (this Court had jurisdiction over alleged breach of fiduciary duty when duty owed is one an agent owes to principal); *Talley Brothers, Inc. v. Ford Motor Co.*, Del.Super., C.A. No. 89C–OC–220, 1992 WL 240341, Bifferato, J. (September 16, 1992) (this Court lacks jurisdiction over claims of breach of fiduciary duty and for imposition of constructive trust in a construction contract dispute); *Snyder v. Butcher & Co.*, Del.Super., C.A. No. 91C–04–289, 1992 WL 240344, Goldstein, J. (September 15, 1992) (claim of breach of fiduciary duty owed by general partner to a limited partner not within this Court's jurisdiction).

*v. Technicolor, Inc.,* Del.Supr., 663 A.2d 1156, 1173–74 (1995). To the extent this Court has jurisdiction to entertain Margaux's defense to the termination fee, it is in the context of whether it is appropriate liquidated damages or impermissible punishment, *i.e.,* a defense at law.

■ Artful packaging of a claim of breach of corporate fiduciary duties as a violation of public policy cannot confer jurisdiction in this Court when it has none. *See McMahon v. New Castle Associates,* Del.Ch., 532 A.2d 601, 604 (1987). Further, as Margaux constructs its defense, for example, that its directors' actions are subject to enhanced scrutiny,[8] it is abundantly clear that it invokes tests employed in Delaware's unique, cherished and separate equity jurisprudence.

Assuming *arguendo* that there is a cause of action for breach of fiduciary duties, it lies in Chancery and would necessarily involve shareholders and Margaux's former directors. But it does not impact on Kysor's action at law for damages due to an alleged breach of contract.

*Termination Fee*

■ The next issue involves the enforceability of the termination fee provision as liquidated damages. Margaux argues that it is punitive and unenforceable. Liquidated damage clauses are enforceable where the damages are uncertain and the amount agreed upon is reasonable. *Donegal Mut. Ins. Co. v. Tri–Plex Alarm Systems,* Del.Super., 622 A.2d 1086, 1089 (1992).

Termination or cancellation fees are not unusual in corporate sale or merger contexts. *Revlon,* 506 A.2d at 184; *Paramount,* 637 A.2d at 50; *Santa Fe, supra,* at 64. They are used to reimburse the prospective buyer for expenditures in pursuing the transaction and also for lost opportunities. *St. Jude Medical, Inc. v. Medtronic,* Minn.App., 536 N.W.2d 24, 27 (1995).

■ Margaux argues that Kysor cannot have it both ways. Its contention is that Kysor's termination fee was to allow recovery for certain expenses and it also seeks

recovery of many of those expenses as part of its claim for $216,396.28. Overlooking the arguable inconsistency of this contention with the Dover/Margaux agreement for a $247,000 termination fee *and* expenses (even though capped at $50,000), the Court does not find the termination fee thereby amounts to a penalty.

■ Margaux cites certain testimony that several Kysor officials inserted this clause to punish Margaux if it did not complete a transaction with Kysor. In effect, this argument invites the Court to examine the parties' intentions regarding the termination fee. Delaware does not and has not adopted a third test of examining the parties' intentions as part of the analysis of the enforceability of liquidated damages. *Wilmington Housing Auth. v. Pan Builders, Inc.,* D.Del., 665 F.Supp. 351, 354 (1987).

■ Even assuming *arguendo* that there is a double recovery here for expenses, the termination fee is not unenforceable. It should first be noted that it is unclear whether the fee and the expenses can be lumped together in evaluating the validity of the fee provision. But if the two are lumped together and again assuming all of Kysor's expenses were recoverable, the fee is only 4.8 percent of its offer. Alone, without expenses, it is 2.8 percent of its offer.

Because termination fees also include uncertain costs due to lost opportunities, a measure of the damages is uncertain. In addition, the $247,000 termination fee provided for in the Margaux/Dover agreement underscores the reasonableness of the figure Kysor and Margaux chose.

Commentators have expressed the view that liquidated damage provisions in the one-to-five percent range of the proposed acquisition price are within a reasonable range, *see* Bainbridge, *Exclusive Merger Agreements and Lock–Ups in Negotiated Corporate Acquisitions,* 75 Minn.L.Rev. 239, 245 (1990), and certainly precedent in this jurisdiction has approved fees representing two percent of the deal price.

8. Citing *QVC,* 637 A.2d at 45.

In other kinds of cases, liquidated damage clauses have been approved. *Lee Builders v. Wells,* Del.Ch. 103 A.2d 918 (1954) (5 percent of purchase price of residence); *Piccotti's Restaurant v. Gracie's Inc.,* Del.Super., C.A. No. 86C–MR–115, 1988 WL 15338, Babiarz, J. (February 23, 1987) (9 percent of purchase price of business).

Margaux's argument is unpersuasive that there are genuine issues of material fact preventing summary judgment. First, as to Kysor's officers' alleged intentions, they are not a factor in this analysis. Second, considering the reasonableness of the percent of the fee and approval of that amount in other cases, there is no need to explore the record for potential factual conflicts of whether $300,000 represented a reasonable forecast of just compensation.

Accordingly, Kysor is entitled to summary judgment on the termination fee.

### Expenses

Kysor also seeks summary judgment on its claim for expenses. The letter of August 31 provided that Margaux "shall ... reimburse Kysor for all expenses incurred in connection with the transaction, including without limitation, its due diligence expenses and the fees and expenses of its professional advisors." Kysor seeks $216,396.28 pursuant to this provision.

Margaux contests its liability to portions of these expenses. First, it argues "reimburse" is ambiguous. That being so, it argues, there is a question of Kysor's entitlement to in-house expenses and attorneys fees. In addition, Margaux contends there is the implicit

rule that the incurred expenses must be reasonable.

Where a contract's language is unambiguous, parol evidence cannot be considered. *Pellaton v. Bank of New York,* Del. Supr., 592 A.2d 473 (1991); *Citadel Holding Corp. v. Roven,* Del.Supr., 603 A.2d 818 (1992).[9]

The record to date indicates that the expenses provision was not negotiated. Kysor requested it and Margaux adopted it without any apparent discussion or give-and-take.

The Court views the "expense" provision to be ambiguous. There is a question of whether in-house expenses are included, even though the contract's language is rather broad. In addition, there is an overlay of reasonableness and whether all of Kysor's expenses are reasonable. *See Crest Plumbing and Heating Co. v. DiLoreto,* 12 Conn. App., 468, 531 A.2d 177, 183 (1987).

In light of the ambiguity of the contract and the need to determine the reasonableness of the claim for expense reimbursement, summary judgment is inappropriate.

### CONCLUSION

For the reasons stated herein, Kysor Industrial Corporation's motion for summary judgment as to the termination fee is **GRANTED.** Its motion for summary judgment on its claim for expenses is **DENIED.**

---

9. There is some confusion about this statement in light of language in *Empire of America Reloca-* *tion Services, Inc. v. Commercial Credit Co.,* Del. Supr., 551 A.2d 433, 436 (1988).