## STATE OF CONNECTICUT *v.* GRADY T. COBB
### (9187)

O'CONNELL, LANDAU and FREEDMAN, Js.

Argued January 22—decision released May 19, 1992

*Arnaldo E. Granados,* assistant public defender, with whom, on the brief, was *William Holden,* public defender, for the appellant (defendant).

*Frederick W. Fawcett,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Henry J. Lyons,* assistant state's attorney, for the appellee (state).

O'CONNELL, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of attempted robbery in the first degree in violation of General Statutes §§ 53a-49[1] and 53a-134 (a) (3)[2] and carrying a dangerous weapon in violation of General Statutes § 53-206 (a).[3]

---

[1] General Statutes § 53a-49 (a) provides: "A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime he: (1) Intentionally engages in conduct which would constitute the crime if attendant circumstances were as he believes them to be; or (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."

[2] General Statutes § 53a-134 (a) provides in pertinent part: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime . . . (3) uses or threatens the use of a dangerous instrument . . . ."

[3] General Statutes § 53-206 (a) provides in pertinent part: "Any person who carries upon his person any slung shot, air rifle, BB. gun, blackjack, sand bag, metal or brass knuckles, or any dirk knife, or any switch knife, or any knife having an automatic spring release device by which a blade is released from the handle, having a blade of over one and one-half inches

The defendant claims that (1) the trial court improperly instructed the jury on an alternative statutory method of committing robbery in the first degree, (2) the state improperly commented on the defendant's failure to testify and on evidence not in the record, and (3) the trial court unduly restricted the defendant's right of cross-examination. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The charges arose out of an attempted robbery of a McDonald's restaurant on Route I-95 in Fairfield by a knife wielding bandit who was identified as the defendant. In the early afternoon of June 11, 1989, Margo Williams was working as a cashier in McDonald's. She had just taken cash from a customer and was about to close the cash register drawer, when the defendant came behind the counter waving a knife and ordered her not to close the drawer. By a reflex action, she closed the drawer anyway and began screaming and running as the defendant chased her. Williams first ran to the kitchen, and then without stopping, ran back to the front of the restaurant, past the customer counter and out the front door.

George Hauser, the restaurant manager, heard Williams screaming and saw her and other employees running from the counter area. At this point, the defendant turned his attention toward Hauser, pointed the knife at him, and ordered him to open the drawer. Hauser prepared to defend himself with a bun spatula, and yelled for everyone to leave the restaurant. Satis-

in length, or stiletto, or any knife the edged portion of the blade of which is four inches or over in length . . . or any other dangerous or deadly weapon or instrument, unless such person has been granted a written permit issued and signed by the first selectman of a town, the mayor or chief of police of a city or the warden of a borough, authorizing such person to carry such weapon or instrument within such town, city or borough, shall be fined not more than five hundred dollars or imprisoned not more than three years or both. . . ."

fied with the evacuation, Hauser himself ran for the door with the defendant chasing him. As they left the building, the defendant and Hauser turned in opposite directions and Hauser saw the defendant, who was still holding the knife, get into the passenger seat of a blue Cadillac.

Hauser reported the attempted robbery to an off duty police officer who happened to be on the scene. The officer approached the Cadillac and demanded the keys from the driver. Coincidentally, a state trooper was in the parking lot on the other side of the restaurant checking for stolen motor vehicles. He received a radio dispatch that a man was running around McDonald's with a knife. The trooper drove around the building and observed people gathered by the Cadillac. The trooper removed the defendant from the Cadillac, where he was identified as the person who attempted to rob the restaurant by Hauser, Williams, and Kathleen Ianiri, a customer who had witnessed the incident. Williams and Ianiri were unable to identify the defendant at trial. The trooper then searched the Cadillac and found a knife under the front passenger seat.

I

General Statutes § 53a-133[4] provides two methods by which robbery may be committed. The first is the use or threatened use of force to prevent or overcome resistance to the taking of the owner's property or to retain such property immediately after the taking. General Statutes § 53a-133 (1). The second is the use or threatened use of force to compel the owner of prop-

---

[4] General Statutes § 53a-133 provides: "A person commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of: (1) Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or (2) compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny."

erty to relinquish it to the robber. General Statutes § 53a-133 (2). The trial court instructed the jury on both methods. The defendant concedes that the evidence produced at trial was sufficient to support his robbery conviction under § 53a-133 (2), but contends that the evidence was insufficient to support his conviction of robbery under § 53a-133 (1).

The defendant's concession that there was sufficient evidence to sustain a conviction under subdivision (2) does not dispose of this appeal. "[W]here a person may have been convicted under more than one statutory alternative, the judgment cannot be supported unless the evidence was sufficient to establish guilt under each statutory provision which the trier may have relied upon." (Internal quotation marks omitted.) *State* v. *Tinsley*, 24 Conn. App. 685, 690, 591 A.2d 448, cert. denied, 220 Conn. 902, 593 A.2d 968 (1991). Thus, we must consider whether there was sufficient evidence in the record to sustain a conviction under subdivision (1). If the evidence was not sufficient, instruction of the jury under subdivision (1) would have been improper.

When we are confronted by an insufficiency of evidence claim our scope of review is limited to a two part inquiry. "We first review the evidence presented at trial, construing it in the light most favorable to sustaining the jury's verdict. We then determine whether, upon the facts thus established and the inferences reasonably drawn therefrom, the jury could reasonably have concluded that the cumulative effect of the evidence established guilt beyond a reasonable doubt. . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Cain*, 25 Conn. App. 503, 520, 596 A.2d 449, cert. granted, 220 Conn. 931, 599 A.2d 383 (1991).

Reviewing the evidence in the present case in accordance with this standard, we conclude that the jury reasonably could have found that when the defendant, while waving a knife, chased Williams after she had closed the cash drawer, he was threatening the immediate use of physical force on her for the purpose of overcoming her resistance to the taking of property. We also conclude that the jury reasonably could have found that the defendant was threatening the immediate use of physical force for the purpose of overcoming resistance to the taking of the money when he was wielding the knife and demanding that Hauser open the drawer and give him the money. See *State* v. *Gilchrist,* 25 Conn. App. 104, 111–12, 593 A.2d 507, cert. denied, 220 Conn. 905, 593 A.2d 970 (1991). Accordingly, we agree with the trial court that there was sufficient evidence to support its jury instruction that defined robbery under both statutory subdivisions.

## II

The defendant next claims that the state's attorney committed prosecutorial misconduct by improperly commenting on the defendant's failure to testify and by commenting in closing argument on evidence that was not in the record.

The fifth amendment to the United States constitution and General Statutes § 54-84[5] both prohibit the state from commenting on an accused's decision not to testify. This prohibition applies to indirect as well

[5] General Statutes § 54-84 provides: "(a) Any person on trial for crime shall be a competent witness, and at his or her option may testify or refuse to testify upon such trial. The neglect or refusal of an accused party to testify shall not be commented upon by the court or prosecuting official, except as provided in subsection (b) of this section.

"(b) Unless the accused requests otherwise, the court shall instruct the jury that they may draw no unfavorable inferences from the accused's failure to testify. In cases tried to the court, no unfavorable inferences shall be drawn by the court from the accused's silence."

as direct comments. *State* v. *Menzies,* 26 Conn. App. 674, 696, 603 A.2d 419, cert. denied, 221 Conn. 924, 608 A.2d 690 (1992). Each allegedly improper comment must be examined to determine if, in the context of the particular case, the language used was manifestly "intended to be, or was . . . of such character that the jury would naturally and necessarily take it to be a [prosecutorial] comment on the failure of the defendant to testify." (Internal quotation marks omitted.) *State* v. *Bowens,* 24 Conn. App. 642, 650, 591 A.2d 433 (1991). Although made while the jury was in the courtroom, the comments in the present case were directed to the court, not to the jury. While this fact alone would not excuse an egregious violation of the rule, it is properly taken into consideration as part of the context in which it is made. An indirect comment in argument to the court on a point of law is less serious than a comment in jury summation that asks the jury to infer that the defendant's silence is evidence of guilt. See *United States* v. *Robinson,* 485 U.S. 25, 108 S. Ct. 864, 99 L. Ed. 2d 23 (1989).

The following colloquy between the court, defense counsel and the state's attorney places the remarks at issue in their proper context.

"[Defense Counsel]: On February 16, 1990, last Friday, my client, Grady Cobb, told you that you should take the weight for this case because it was your action, isn't that so?

"[State's Attorney]: That's objected to.

"The Witness: No, it's not true.

"The Court: Don't answer.

"[State's Attorney]: If such was the situation, it's a self-serving declaration, if Your Honor please.

"[Defense Counsel]: Your Honor, it's a completely permissible area of cross-examination.

"[State's Attorney]: If Mr. Cobb got on the stand and testified to that, then I could see the point.

"The Court: Sustained.

"[Defense Counsel]: We take exception, Your Honor.

"The Court: It may be noted."

The following occurred during voir dire on an exhibit:

"[State's Attorney]: So you don't know how long a period of time elapsed between his arrest and between the time he got to the North Avenue Correctional Institute?

"[Defense Counsel]: Objection, Your Honor. It goes beyond the scope of the documents and it goes beyond the scope of voir dire, Your Honor, with all due respect.

"The Court: I'll allow it.

"[Defense Counsel]: Exception.

"The Witness: No, I do not.

"[State's Attorney]: I would object, if Your Honor please.

"[Defense Counsel]: We would like to know the grounds for the objection with all due respect, Your Honor.

"[State's Attorney]: Well, a proper foundation laid. In effect, no one knows how much time elapsed before he was brought to the correctional institution. *It is incumbent upon the defendant to prove what occurred between the time he was arrested and the time he got to the correctional institution.*" (Emphasis added.)

In determining the effect of the state's words on the jury, we may consider the effect they had on defense

counsel. See *State* v. *Jones,* 215 Conn. 173, 186, 575 A.2d 216 (1990). Although defense counsel objected on evidentiary grounds, he did not object on fifth amendment or § 54-84 (b) statutory grounds. Further, defense counsel failed to request a curative instruction or move for a mistrial. From this, we infer that when these words were uttered, defense counsel did not believe that they could be construed by the jurors to mean that they should draw an inference of guilt from the defendant's failure to testify.

The ultimate test is whether the language used by the prosecutor was clearly of such character that, in the context in which it was used, the jury would naturally and necessarily interpret it to be a comment on the failure of the defendant to testify. *State* v. *Menzies,* supra. In the present case, we conclude that in the context of the particular courtroom environment in which they were spoken, the remarks were not forbidden prosecutorial comments on the defendant's failure to testify.

In the second prong of his prosecutorial misconduct claim, the defendant argues that in its jury summation, the state twice commented on evidence that was not in the record. The first occasion arose when the state referred to Williams, the McDonald's employee, as being scared. Although Williams did not testify that she could not identify the defendant as the robber because she was scared, the prosecutor was entitled to draw a reasonable inference from all of the evidence that the sixteen year old girl, who was threatened by a knife wielding robber, was scared and thus unable to identify the robber at trial. In a final summation, a prosecutor may properly posit reasonable inferences that may be drawn from facts contained in the record. See American Bar Association Standards of Criminal

Justice (2d Ed.) §§ 3-5.8 (a), 3-5.9; *State* v. *Arline,* 25 Conn. App. 653, 661, 596 A.2d 17, cert. granted, 220 Conn. 924, 598 A.2d 364 (1991).

The defendant's second claim, that the state's attorney improperly included facts in argument that were not in the record, pertains to the testimony of Ianiri. The defendant argues that the prosecutor improperly commented that Ianiri identified the defendant when he was sitting in the state police cruiser as the same person who was waving the knife inside the restaurant. The following is an excerpt of Ianiri's testimony.

"Q. Can you describe the man that you saw with the knife?

"A. He was tall. He was black, probably over six feet tall. He was wearing a grey shirt. He looked a little scruffy. He had greyish, blackish hair on his face, large build.

"Q. Did you see that man sometime later?

"A. Yes, I did.

"Q. Where were you when you saw him?

"A. I was sitting in a state trooper's car.

"Q. And where was that state trooper's car?

"A. Located outside of McDonald's.

"Q. And where did you see that man?

"A. In another police car.

"Q. And was that the very same man that you saw inside with the knife?

"A. Yes, it was."

Thus, our review of the record discloses that the evidence and inferences reasonably drawn therefrom provide adequate support for the challenged statement in the prosecutor's summation.

In the context of the whole trial, we conclude that there was no conduct on the part of the state's attorney that " 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' " *Darden* v. *Wainwright,* 477 U.S. 168, 181, 106 S. Ct. 2464, 91 L. Ed. 2d 144 (1986), quoting *Donnelly* v. *DeChristoforo,* 416 U.S. 637, 94 S. Ct. 1868, 40 L. Ed. 2d 431 (1974).

### III

The defendant's final claim is that the trial court unduly restricted his cross-examination in violation of his sixth amendment right to confrontation. This claim arises out of the cross-examination of Hauser, the general manager of the restaurant. The trial court sustained the state's objection to defense counsel's question "You are interested in the outcome of this trial, isn't that so sir?" The defendant contends that because of Hauser's position as the manager of the restaurant, he had an interest in the outcome of the trial beyond that of the common observer and the disallowed question went to interest, bias and motive.

It is firmly established that cross-examination regarding motive, bias, interest and prejudice "is a matter of right and may not be *unduly* restricted." (Emphasis added; internal quotation marks omitted.) *State* v. *Lewis,* 25 Conn. App. 354, 358, 594 A.2d 489, cert. denied, 220 Conn. 914, 597 A.2d 336 (1991). "The right to cross-examine adverse witnesses is not absolute, however, and limitations on the scope of cross-examination are within the sound discretion of the trial court, as long as the defendant has been allowed sufficient cross-examination to meet the requirements of the confrontation clause." Id., 357–58. The defendant's constitutional right to confrontation is satisfied if he is given the opportunity to expose facts from which the

jury can appropriately draw inferences concerning a witness' reliability. *Davis* v. *Alaska*, 415 U.S. 308, 318, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974).

The cases that have examined a defendant's right to confront and cross-examine witnesses confirm the rule that "[e]very evidentiary ruling which denies a defendant a line of inquiry to which he thinks he is entitled is not constitutional error." (Internal quotation marks omitted.) *State* v. *Crumble,* 24 Conn. App. 57, 66, 585 A.2d 1245, cert. denied, 218 Conn. 902, 588 A.2d 1077 (1991). The conviction in *In re Marcel L.,* 14 Conn. App. 548, 542 A.2d 340 (1988), was reversed because the trial court foreclosed cross-examination of an entire area of inquiry that could have exposed bias, interest or motive of the only three witnesses the state offered against the defendant. This contrasts sharply with the present case, where the defendant was allowed substantial cross-examination of Hauser. He fully cross-examined him concerning conflicts between his written statement and his trial testimony and the details of the crime that he had witnessed. In addition, the defendant was permitted to cross-examine Hauser in detail concerning his ability to perceive and relate the events that took place at the restaurant. We conclude that the defendant's right of cross-examination was not unconstitutionally restricted.

The judgment is affirmed.

In this opinion the other judges concurred.