FEDERAL DEPOSIT INSURANCE CORPORATION *v.*
RALPH CARABETTA

FEDERAL DEPOSIT INSURANCE CORPORATION *v.*
SALVATORE P. CARABETTA

FEDERAL DEPOSIT INSURANCE CORPORATION *v.*
EVELYN M. CARABETTA

FEDERAL DEPOSIT INSURANCE CORPORATION *v.*
SALVATORE R. CARABETTA
(AC 17923)

Foti, Landau and Dupont, Js.

Argued April 28—officially released October 19, 1999

*Kerry M. Wisser*, with whom, on the brief, was *Nathan A. Schatz*, for the appellants (defendants).

*James W. Oliver*, with whom was *Maria K. Tougas*, for the appellee (plaintiff).

*Opinion*

LANDAU, J. This is a joint appeal from four judgments of the trial court rendered after a hearing in damages

awarding damages to the plaintiff Federal Deposit Insurance Corporation (FDIC) as receiver of National Industrial Bank of Connecticut (bank) against the four individual defendants.[1] On appeal, the defendants raise evidentiary challenges, within the parameters of General Statutes § 52-180,[2] maintaining that the trial court improperly admitted testimonial and documentary evidence to establish the amount of their debts. We affirm the judgments of the trial court.

The facts are not in dispute. Each of the defendants executed separate promissory notes in favor of the bank and failed to make payment. After the bank was declared insolvent, the FDIC, as receiver, commenced actions against each of the defendants. Although each defendant filed an answer, special defenses and a counterclaim, the trial court granted summary judgment as to liability in favor of the plaintiff against each defendant. A consolidated hearing in damages resulted in judgments for the plaintiff against each defendant. At

---

[1] The defendants, against whom the plaintiff brought separate actions, are Ralph Carabetta, Salvatore P. Carabetta, Evelyn M. Carabetta and Salvatore R. Carabetta.

[2] General Statutes § 52-180 provides in relevant part: "(a) Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence or event, shall be admissible as evidence of the act, transaction, occurrence or event, if the trial judge finds that it was made in the regular course of any business, and that it was the regular course of the business to make the writing or record at the time of the act, transaction, occurrence or event or within a reasonable time thereafter.

"(b) The writing or record shall not be rendered inadmissible by (1) a party's failure to produce as witnesses the person or persons who made the writing or record, or who have personal knowledge of the act, transaction, occurrence or event recorded or (2) the party's failure to show that such persons are unavailable as witnesses. Either of such facts and all other circumstances of the making of the writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect the weight of the evidence, but not to affect its admissibility. . . .

"(d) The term 'business' shall include business, profession, occupation and calling of every kind."

the hearing in damages, the court admitted evidence of the amount of the debt over the defendants' objections that the evidence was not a business record under the business records exception to the hearsay rule in § 52-180. On appeal, the defendants claim that the court inappropriately determined the amount of principal and interest due on the promissory notes because it improperly admitted (1) testimonial evidence regarding the outstanding balances on the promissory notes at the time the bank failed and the amount of interest due and (2) documentary evidence as proof of (a) the principal balance on the promissory notes at the time of the bank's failure because the document was not a business record of the FDIC and (b) interest because the document was created during and for trial. Additional facts will be discussed where relevant to the defendants' claims.

"It is a well established principle of law that the trial court may exercise its discretion with regard to evidentiary rulings, and the trial court's rulings will not be disturbed on appellate review absent abuse of that discretion. . . . Sound discretion, by definition, means a discretion that is not exercised arbitrarily or wilfully, but with regard to what is right and equitable under the circumstances and the law . . . . And [it] requires a knowledge and understanding of the material circumstances surrounding the matter . . . . In our review of these discretionary determinations, we make every reasonable presumption in favor of upholding the trial court's ruling." (Citations omitted; internal quotation marks omitted.) *New London Federal Savings Bank* v. *Tucciarone*, 48 Conn. App. 89, 92, 709 A.2d 14 (1998). "We have often stated that before a party is entitled to a new trial because of an erroneous evidentiary ruling, he or she has the burden of demonstrating that the error was harmful. . . . When determining that issue in a civil case, the standard to be used is whether the

erroneous ruling would likely affect the result." (Internal quotation marks omitted.) *Poulos* v. *Pfizer, Inc.,* 244 Conn. 598, 614, 711 A.2d 688 (1998).

## I

The defendants' first claim is that the trial court improperly admitted testimonial evidence from (1) Joyce Ragozzino of the outstanding balances on the promissory notes at the time the bank was declared insolvent and (2) Teresa Thurston as to the interest due. We disagree.

## A

Ragozzino, who was senior vice president of the bank at the time it went into receivership, testified from her recollection about a portfolio she kept at the bank that showed that the defendants' loans had not been repaid. The defendants objected because Ragozzino testified from memory as to the information contained in the portfolio, which could not be put into evidence because it was not available. Citing the best evidence rule,[3] the

---

[3] Under the best evidence rule, when "proving the terms of a writing, where the terms are material, the original writing must be produced unless it is shown to be unavailable for some reason other than the serious fault of the proponent." (Internal quotation marks omitted.) *Brookfield* v. *Candlewood Shores Estates, Inc.,* 201 Conn. 1, 10, 513 A.2d 1218 (1986). "[T]he basic premise justifying the rule is the central position which the written word occupies in the law. . . . It is because of this centrality . . . that presenting to a court the exact words of a writing is of more than average importance, particularly in the case of operative or dispositive instruments such as deeds, wills or contracts, where a slight variation of words may mean a great difference in rights." (Citation omitted; internal quotation marks omitted.) Id., 10–11. "Although the rule was originally perceived to be of possible application to all kinds of evidence . . . it has tended to become now chiefly confined to the rule that the terms of a document must be proved by the production of the document itself, unless production is not feasible . . . . In any event, the best evidence rule at common law is a preferential, rather than an exclusionary rule. . . . [T]he rule is not intended as an exclusionary one; it is merely a rule of preference operating as a special exception to the rules of testimonial preference." (Citations omitted; internal quotation marks omitted.) Id., 11–12.

defendants, therefore, claim they could not cross-examine the witness about the contents of the portfolio. The court permitted Ragozzino to testify from personal knowledge and denied the defendants' motion to strike her testimony, ruling that the best evidence rule was not applicable because the portfolio could not be found. See *Brookfield* v. *Candlewood Shores Estates, Inc.*, 201 Conn. 1, 9–12, 513 A.2d 1218 (1986).

The plaintiff argues that this claim is immaterial because documents that provided the same evidence concerning the status of the defendants' loans at the time the bank went into receivership were subsequently admitted into evidence.[1] "When an improper evidentiary ruling is not constitutional in nature, the defendant bears the burden of demonstrating that the error was harmful. . . . One factor to be considered in determining whether an improper ruling on evidence is a harmless error is whether the testimony was cumulative . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Rolli*, 53 Conn. App. 269, 276, 729 A.2d 245, cert. denied, 249 Conn. 926, 733 A.2d 850 (1999). Because the evidence was cumulative, we agree with the plaintiff and need not determine whether the court's ruling was improper.

### B

The defendants also objected to the testimony of Thurston, a technician in the FDIC's accounting department, as to the principal balance and accrued interest on each loan. The witness acknowledged that her testimony was based on computer records of the FDIC that incorporated information from the records of the bank. Thurston is a person familiar with the FDIC's computer hardware and software, including the "LAMIS System." She testified that the computer printouts consisted of

---

[1] Exhibits two, six, seven and eight concerning the defendants' failure to repay their loans and the interest due on them were put into evidence.

a "POFF" (payoff screen), containing the account numbers of the loans, the outstanding principal balance and accrued interest on each loan; the "LGEN" (loan general history screen), containing general information about the loan, including the per diem, current rate, and loan "paid to" date; and the "HRAP" (history recap screen), containing rate change information. Thurston had received ongoing computer training, had the ability to access all computer screens and found the FDIC computer system to be generally reliable. The defendants objected to Thurston's testimony because it relied on information that purportedly came from the records of the bank and that it was, therefore, hearsay within hearsay.

In this age of electronics, evidence is not inadmissible just because the information was provided by means of a computer. In *American Oil Co.* v. *Valenti*, 179 Conn. 349, 360–61, 426 A.2d 305 (1979), our Supreme Court determined that one who used computer records and had only an indirect role in their production was competent to testify that the records were made in the ordinary course of business. The witness' personal knowledge goes to the weight of the evidence, not its admissibility. Id., 357–58.

"Business records that are generated by computers present structural questions of reliability that transcend the reliability of the underlying information that is entered into the computer. Computer machinery may make errors because of malfunctioning of the hardware, the computer's mechanical apparatus. Computers may also . . . make errors that arise out of defects in the software, the input procedures, the data base, and the processing program. . . . In view of the complex nature of the operation of computers . . . courts have been cautioned to take special care to be certain that

the foundation is sufficient to warrant a finding of trustworthiness and that the opposing party has full opportunity to inquire into the process by which information is fed into the computer." (Citation omitted; internal quotation marks omitted.) Id., 358–59.

In *American Oil Co.*, our Supreme Court found that the foundation to establish the admissibility of computer records must come from a witness who is knowledgeable about computers and the process used by the business to create computer generated records, and who can be examined about the function and reliability of the computer system. See id., 360–61. On the basis of Thurston's testimony, we conclude that she was a person competent to testify as to the trustworthiness of the computer records in question pursuant to *American Oil Co.*

The defendants rely on *Central Bank* v. *Colonial Romanelli Associates*, 38 Conn. App. 575, 579–80, 662 A.2d 157 (1995), in support of their claim. *Central Bank* is factually distinguishable from this case. In *Central Bank*, the defendants objected to testimony from an FDIC credit specialist who, unlike Thurston, did not have personal knowledge of the FDIC computer records, the computer system or its reliability. The defendants also cite *New England Savings Bank* v. *Bedford Realty Corp.*, 238 Conn. 745, 680 A.2d 301 (1996), in support of their position. *Bedford Realty Corp.* is factually different as well because, in that case, the witness did not have personal knowledge of the documents she relied on to testify and the documents were not offered into evidence. Id., 757–58. Again, Thurston had personal knowledge of the manner in which computer records were kept and the documents she relied on were admitted into evidence. See part II of this opinion. For these reasons and for the reasons discussed in part II of this opinion, the trial court properly admitted the testimony of Thurston.

## II

The defendants also claim that the trial court improperly admitted documentary evidence, specifically (1) exhibit two as proof of the principal balance on the promissory notes at the time of the bank's failure and (2) exhibit six as proof of the interest due because the document was created during and for the litigation. We do not agree.

## A

The defendants maintain that the trial court improperly admitted computer records into evidence as authentic business records of the bank or the FDIC. At trial, the defendants objected to the admission of exhibit two claiming that it had not been authenticated and that a proper foundation was lacking. The FDIC called Edward Bachman, an employee of United Bank and Trust Company (United Bank), the bank's off-site data processor; Alan Brown, United Bank's operations manager; Katherine Savage, the bank's loan supervisor, as well as others to authenticate exhibit two, which was a computer generated document.

"Early Connecticut case law enunciated rules favoring the admissibility of business records. . . . [A] shop book was admissible to prove the amount of indebtedness. . . . Such entries were admissible in proceedings involving parties other than the original debtor and creditor. . . . More recent Connecticut case law has articulated similarly modest requirements for the admission of business records under § 52-180." (Citations omitted.) *New England Savings Bank* v. *Bedford Realty Corp.*, 246 Conn. 594, 602, 717 A.2d 713 (1998).

"To be admissible under the business record exception to the hearsay rule, a trial court judge must find that the record satisfies each of the three conditions

set forth in General Statutes § 52-180. The court must determine, before concluding that it is admissible, that the record was made in the regular course of business, that it was the regular course of such business to make such a record, and that it was made at the time of the act described in the report, or within a reasonable time thereafter." (Internal quotation marks omitted.) *Bell Food Services, Inc.* v. *Sherbacow,* 217 Conn. 476, 485, 586 A.2d 1157 (1991).

"Conformity with the statutory conditions which permit the admission of business records is deemed to provide reasonable indicia of reliability. . . . Even when properly admitted, [however,] such records carry no presumption of accuracy, their credibility remaining a question for the trier of fact. . . . While the circumstances of the making of the [records] may be shown to affect the weight of that evidence . . . there is no requirement that the accuracy of a business record be proved as a prerequisite to its admission." (Citations omitted; internal quotation marks omitted.) *State* v. *Waterman,* 7 Conn. App. 326, 341–42, 509 A.2d 518, cert. denied, 200 Conn. 807, 512 A.2d 231 (1986).

"We have stated that § 52-180 'should be liberally interpreted' in favor of admissibility. *Bell Food Services, Inc.* v. *Sherbacow,* supra, 217 Conn. 485; see *Emhart Industries, Inc.* v. *Amalgamated Local Union 376, U.A.W.,* 190 Conn. 371, 388, 461 A.2d 422 (1983). The witness introducing the document need not have made the entry himself or herself, nor have been employed by the organization during the relevant time period. *Baumert-Moran Sales Co.* v. *Red Bird Truck Rental Corp.,* 149 Conn. 42, 45, 175 A.2d 189 (1961)." *New England Savings Bank* v. *Bedford Realty Corp.,* supra, 246 Conn. 603. Also, "[t]here is no requirement in § 52-180 . . . that the documents must be prepared by the organization itself to be admissible as that organization's business records. All that is required is that it be

in the regular course of the business to make the writing or record." (Internal quotation marks omitted.) *Crest Plumbing & Heating Co.* v. *DiLoreto*, 12 Conn. App. 468, 475–76, 531 A.2d 177 (1987).

The liberal application of the statute is derived from the recognition that the trustworthiness of such documents comes from their being used for business and not litigation. *Emhart Industries, Inc.* v. *Amalgamated Local Union 376, U.A.W.*, supra, 190 Conn. 388–89. Thus, the fact that the business relies on such records tends to establish their trustworthiness.

"Authentication is . . . a necessary preliminary to the introduction of most writings in evidence . . . . A proponent may authenticate a document by demonstrating proof of authorship of, or other connection with, [such] writings. . . . In general, a writing may be authenticated by a number of methods, including direct testimony, circumstantial evidence or proof of custody. . . . The requirements for authenticating a business record are identical to those for laying a foundation for its admissibility under the hearsay exception. It is generally held that business records may be authenticated by the testimony of one familiar with the books of the concern, such as a custodian or supervisor, who has not made the record or seen it made, that the offered writing is actually part of the records of the business." (Citations omitted; internal quotation marks omitted.) *New England Savings Bank* v. *Bedford Realty Corp.*, supra, 246 Conn. 604.

With this understanding of the law concerning the admissibility of business records, we turn our analysis to the evidence before the trial court. The FDIC called Bachman, who authenticated and testified as to the data processing contract between the bank and United Bank, and established United Bank's business duty to provide data processing services to the bank. Brown,

the operations manager of United Bank in the 1980s, identified the computer printouts of the loan history reports of each defendant, stating that they were records produced by United Bank. Brown did so by identifying the type of computer paper and the matrix printing that United Bank utilized at that time, as well as the number United Bank assigned internally to the bank's records. Brown was the supervisor in charge of running the reports on November 9, 1989, the date the FDIC took over the bank. He testified that the records were boxed at his office and taken by FDIC officials at that time. Brown's testimony, coupled with United Bank's duty to keep the records, was sufficient to authenticate the loan history reports of the defendants because he had personal knowledge of how and when the reports were generated, and that they were generated by United Bank on the morning the FDIC took over the bank.

Although Savage, supervisor of the loan department, was unable to testify that she had seen exhibit two before, she identified the reports, matching the account numbers on them with the numbers on the subject promissory notes. The FDIC also called Keith Parker, a liquidation technician with the FDIC conversion team, who testified as to how the FDIC conversion process of the bank took place and the testing procedures employed by the FDIC to ensure that the conversion had been properly and accurately done.

Although the requirements for authenticating a business record are identical to those for laying a foundation for its admissibility under the business records exception to the hearsay rule; see id.; where computer generated records are concerned, the proponent also must establish that the basic elements of the computer systems are reliable. "Trial courts must have considerable latitude in determining the admissibility of evidence in [the area of computer generated business records] as

in others. *Doran* v. *Wolk*, 170 Conn. 226, 232, 365 A.2d 1190 (1976). We are not prepared to identify with precision what status in a particular company's hierarchy a witness must have in order to be sufficiently knowledgeable to testify about computer records. Section 52-180 expressly allows business records to be admitted despite the absence of testimony from 'the person or persons who made the writing or record, or who [had] personal knowledge of the act, transaction, occurrence or event recorded.' This language is helpful in clarifying that it is not necessary to produce as a witness the [data entry clerk] who actually entered information into the computer or the programmer who designed the processing program." *American Oil Co.* v. *Valenti,* supra, 179 Conn. 360. What is crucial is not the witness' job description, but rather his or her knowledge of the basic elements that afford reliability and trustworthiness to computer printouts. Id.

The gist of the defendants' argument is that although the documents may have been *received* in the ordinary course of business, this fact does not satisfy the requirement of § 52-180 (a) that the documents were *made* in the ordinary course of business. This argument, however, assumes that § 52-180 requires that the documents must be prepared by the organization itself to be admissible as that organization's business records. This is not so. All that is required is that it be in the regular course of the business to make the "writing or record."

In this case, the data was placed in computer memory nine years prior to trial. At trial, the defendants sought a ruling that, under the claim of authentication, the witness must testify that both the screen and the hard copy were identical. Specifically, the defendants claim that because the hard copy record was printed by United Bank, for purposes of authentication, the witness must testify that the hard copy was the very thing

that was on the screen at the bank. The transcript contains substantial evidence of the reliability of the hardware and software systems. To accept the defendants' invitation would place an impossible burden on the proponent of the use of the business records rule as to records generated by computer. In this case, it would require a witness to remember and testify that each and every single report that came from United Bank was exactly the same, on that particular day, as the screen from which that report was produced.

The business records rule is one of convenience. The purpose of the legislature in enacting the statute was to permit a writing or record, made in the regular course of business, to be received into evidence without the necessity of calling as a witness everyone who had any part in making it, providing a duty is shown. See *Borucki* v. *MacKenzie Bros. Co.*, 125 Conn. 92, 99–100, 3 A.2d 224 (1938). The standard the defendants seek to impose to authenticate business records would effectively eviscerate § 52-180 in any application to computer generated records. A careful reading of the whole record demonstrates that the hard copy documents were business records. The defendants' concerns go to the weight of the evidence rather than to its admissibility. The proper foundation having been established, the trial court properly admitted the evidence.

The defendants' challenge to the preparation of the hard copy of the document by United Bank is of little merit. We do not require that the documents must be prepared by the organization itself to be admissible under § 52-180. *Crest Plumbing & Heating* v. *DiLoreto*, supra, 12 Conn. App. 475. United Bank merely printed a hard copy of documents prepared by the bank and downloaded to FDIC.

We conclude that the keeping of a report in the failed bank's data bank that served as the basis of whether the

FDIC was owed money under a note and loan agreement satisfies the statutory requirement of "record" and that such a record could reasonably be found to have been made in the course of the FDIC's business, that it was the regular course of such business to make such a record and that it was made at the time of the act described in the report or within a reasonable time thereafter.

B

The defendants' final claim is that the trial court improperly admitted exhibit six into evidence because it was created during the trial. We do not agree that the exhibit was improperly admitted.

The following additional facts are necessary for our resolution of this claim. Thurston was called twice to testify as to the amount of interest due on the loans. She first testified in July, 1997, explaining that she had calculated the interest due from information gleaned from The Wall Street Journal. She did not know, however, whether the information she obtained was the lowest rate of interest or the prime rate. The note required the lowest rate. The court observed that Thurston had not followed the language of the note in computing the interest due. Thurston testified again, approximately two months later, that the FDIC had reviewed the terms of the promissory notes and determined that they called for a 14 percent postmaturity default rate and that consequently the loans were "rebooked" to the lower default rate. Exhibit six represented the recalculation of the interest due on the promissory notes. Thurston testified that it was in the ordinary course of business to put the changed rate of interest into the computer and keep that running on a daily basis. The defendants claim that exhibit six should not have been admitted into evidence because it was created specifically for use in litigation.

"The trustworthiness of a business record devolves from its being prepared 'in the ordinary course of business,' but litigation is common enough for most firms so that they must keep or prepare records in connection with present or future litigation. Although such records should be reviewed with particular care for indicia of trustworthiness, they should not be excluded solely for the reason of their nexus to litigation. Cf. *State* v. *Jeffrey*, 220 Conn. 698, 710, 601 A.2d 993 [(1991), cert. denied, 505 U.S. 1224, 112 S. Ct. 3041, 120 L. Ed. 2d 909 (1992)]." C. Tait & J. LaPlante, Connecticut Evidence (Sup. 1999) § 11.14.3, p. 239.

Here, the court determined that Thurston had recalculated the interest due to conform to the language of the promissory notes and had entered the data in the computer so that the amount of interest could be calculated on a daily basis. Exhibit six was printed out just before Thurston testified so that the document would accurately reflect the amount of interest due at that time. The fact of the matter is that the defendants defaulted on their promise to pay the bank, and the terms of the note permitted the FDIC to "rebook" the interest due. The amount of interest due changed every day the defendants failed to repay their debt. It was in the ordinary course of the FDIC's business, as receiver of the bank, to collect on the promissory notes in default and it had to resort to litigation to do so. The fact that exhibit six was prepared at the time of and for the litigation was no reason to exclude it from evidence. The court, therefore, appropriately exercised its broad discretion and properly admitted exhibit six.

The judgments are affirmed.

In this opinion the other judges concurred.