STATE OF CONNECTICUT *v.*
RICHARD F. BOTHWELL
(AC 21920)

Bishop, West and Stoughton, Js.

Argued March 31—officially released July 15, 2003

*Russell S. Palmer*, for the appellant (defendant).

*Ronald G. Weller*, assistant state's attorney, with whom, on the brief, were *David I. Cohen*, state's attorney, *Colleen Zingaro*, deputy assistant state's attorney, and *Proloy K. Das*, former special deputy assistant state's attorney, for the appellee (state).

*Opinion*

WEST, J. The defendant, Richard F. Bothwell, appeals from the judgment of conviction, rendered following a jury trial, of operation of a motor vehicle while under the influence of liquor or drugs or while having an elevated blood alcohol content in violation of General Statutes (Rev. to 1999) § 14-227a, as amended by Public Acts 1999, No. 99-218, and Public Acts 1999, No. 99-255. He also appeals from the judgment, rendered following a trial to the court, convicting him of being a

third time offender under § 14-227a (g).[1] The defendant claims that (1) the state engaged in prosecutorial misconduct as a result of several comments made during the trial, (2) the court improperly admitted into evidence certain documents that were not properly authenticated and (3) the evidence presented at trial was insufficient to establish guilt beyond a reasonable doubt under the second part of the information.

The following facts are relevant to our resolution of the defendant's appeal. At approximately 10:30 p.m. on December 3, 1999, off-duty police Lieutenant William Ferri was traveling north on Route 106 on his way to work when he encountered a traffic jam. After being delayed in traffic for approximately five minutes, Ferri decided to investigate the situation to determine the cause of the traffic delay. Ferri subsequently discovered that a stalled tractor-trailer was blocking the entire southbound lane and a portion of the northbound lane. A brown pickup truck, driven by the defendant, also was blocking the southbound lane. Ferri approached the pickup truck and yelled to the defendant to move his vehicle. The defendant did not respond. When Ferri was within three feet of the defendant, he again told the defendant to move the vehicle. The defendant mumbled something that Ferri could not understand. Ferri observed that the defendant's eyes were bloodshot and

[1] Pursuant to Practice Book § 36-14, the defendant was charged in a two part information. Part A of the information charged the defendant with the substantive offense while part B charged the defendant with being a repeat offender for the purpose of sentencing. See *State* v. *Fitzgerald*, 54 Conn. App. 258, 262, 737 A.2d 922 (1999), rev'd on other grounds, 257 Conn. 106, 777 A.2d 580 (2001).

Practice Book § 36-14 provides in relevant part: "Where the information alleges, in addition to the principal offense charged, a former conviction or convictions, such information shall be in two separate parts, each signed by the prosecuting authority. In the first part, the particular offense with which the accused is charged shall be set out, and in the other part the former conviction or convictions shall be alleged. . . ."

that there was a strong odor of alcohol emanating from the vehicle.

At that point, Ferri ordered the defendant to stop the vehicle, which was moving slightly, and to exit from the vehicle. The defendant's truck rolled another fifteen feet before coming to an abrupt halt. The defendant then got out of the vehicle, and Ferri noticed that he was unsteady on his feet, his speech was slurred and he smelled strongly of alcohol. Ferri told the defendant to wait where he was, and Ferri then returned to his vehicle to retrieve his police equipment belt. As Ferri returned to his vehicle, the defendant walked away from the scene, up a driveway and disappeared into a wooded area. As he left the scene, the defendant ignored multiple orders from Ferri to stop.

After several on-duty police officers arrived at the scene, Ferri left to report for the beginning of his shift. One of the remaining officers, Lieutenant Steven Wood, noticed that one of the vehicles leaving the scene was traveling south on Old Stamford Road. He heard what sounded like a shout come from that direction and observed a figure climbing into the passenger side of the vehicle. The officer realized that the person entering the vehicle might be the suspect and pursued the vehicle. Wood caught up with the vehicle and stopped it. The officer observed that the passenger matched the suspect's description and called police headquarters for Ferri's assistance with the identification. Ferri arrived at the scene and positively identified the passenger as the suspect who had fled from the scene. The defendant was then taken to police headquarters, arrested and charged.

At the station house, the defendant was subjected to four field sobriety tests: The horizontal gaze nystagmus test; the walk and turn test; the one-leg stand test; and the alphabet test. On the basis of the defendant's perfor-

mance on those tests, the administering officer concluded that the defendant was intoxicated and that his blood alcohol content was greater than 0.10. The defendant refused to submit to a Breathalyzer test. Additional facts will be set forth as necessary.

## I

We first address the defendant's claim that certain of the prosecutor's comments during the trial were improper and amounted to prosecutorial misconduct. Specifically, the defendant claims that the prosecutor introduced improper and extraneous commentary during an objection to a certain line of questioning posed by defense counsel during cross-examination, that the prosecutor improperly commented on the defendant's fifth amendment right not to testify, and that the prosecutor explicitly appealed to the jurors' emotions, biases and prejudices during closing argument by suggesting that the defendant could have killed someone while driving under the influence of an intoxicating substance.

The standard of review for a claim of prosecutorial misconduct is well settled. "[T]o deprive a defendant of his constitutional right to a fair trial . . . the prosecutor's conduct must have so infected the trial with unfairness as to make the resulting conviction a denial of due process. . . . We do not focus alone, however, on the conduct of the prosecutor. The fairness of the trial and not the culpability of the prosecutor is the standard for analyzing the constitutional due process claims of criminal defendants alleging prosecutorial misconduct." (Internal quotation marks omitted.) *State v. Correa*, 241 Conn. 322, 356–57, 696 A.2d 944 (1997).

"Prosecutorial misconduct may occur in the course of cross-examination of witnesses and during closing argument. . . . In determining whether prosecutorial misconduct was so serious as to amount to a denial of

due process, this court . . . has focused on several factors. . . . Those factors include (1) the extent to which the misconduct was invited by defense conduct or argument, (2) the severity of the misconduct, (3) the frequency of the misconduct, (4) the centrality of the misconduct to the critical issues in the case, (5) the strength of the curative measures adopted and (6) the strength of the state's case." (Citations omitted; internal quotation marks omitted.) *State* v. *Stevenson*, 70 Conn. App. 29, 33–34, 797 A.2d 1, cert. granted on other grounds, 261 Conn. 918, 806 A.2d 1057 (2002).

"We do not scrutinize each individual comment in a vacuum, but rather we must review the comments complained of in the context of the entire trial. . . . It is in that context that the burden [falls] on the defendant to demonstrate that the remarks were so prejudicial that he was deprived of a fair trial and the entire proceedings were tainted. . . .

"A statement within closing argument is blatantly egregious as to implicate the fundamental fairness of the trial itself where in light of all of the facts and circumstances . . . no curative instruction could reasonably be expected to remove [its] prejudicial impact. . . . In reviewing a claim of prosecutorial misconduct during closing argument, we ask whether the prosecutor's conduct so infected the trial with unfairness as to make the resulting conviction a denial of due process." (Citation omitted; internal quotation marks omitted.) *State* v. *Gentile*, 75 Conn. App. 839, 852–53, 818 A.2d 88, cert. denied, 263 Conn. 926, 823 A.2d 1218 (2003).

A

The defendant first complains that the prosecutor prefaced one of his objections at trial with an improper comment directed at defense counsel. The alleged improper comment followed a line of cross-examination of a police officer about the officer's description

of the defendant's eyes as bloodshot on the night of the arrest. Defense counsel requested permission from the court to have the police officer view the defendant's eyes in the courtroom. The prosecutor objected to that request, stating: "[The defendant], with regard to coming to court prior to this, whether he drank today, whether or not he got sand in his eyes, whether his eyes look bloodshot or not to this officer is irrelevant to the issue that this officer is testifying to. I don't know what kind of show [defense counsel] is trying to put on, but I don't think it's relevant and I don't think it's appropriate." The court sustained the objection.

Following that objection, defense counsel inquired of the witness whether the defendant looked the same as he did when he was in custody following his arrest. The prosecutor again objected to that line of questioning, stating: "Your Honor, I would renew my objection. If counsel would like to put his client on the [witness] stand, and we can question him about whether he has been drinking today. When was the last time he drank? And several other factors with regard to his physical state."

With respect to the prosecutor's comments, we conclude that they did not so infect the trial with prejudice as to deprive the defendant of his right to a fair trial. The prosecutor's comments were no more than legitimate argument in support of his objection. It is true that a party objecting to a question at trial should state only the legal basis for such objection and that argument in support of the objection should be reserved until requested by the court. See Practice Book § 5-5.[2] We

---

[2] Practice Book § 5-5 provides: "Whenever an objection to the admission of evidence is made, counsel shall state the grounds upon which it is claimed or upon which objection is made, succinctly and in such form as he or she desires it to go upon the record, before any discussion or argument is had. Argument upon such objection or upon any interlocutory question arising during the trial of a case shall not be made by either party unless the judicial authority requests it and, if made, must be brief and to the point."

cannot say, however, that the prosecutor's premature offer of support for his objection prejudiced the defendant.

Contrary to the defendant's assertion, the likely import of the prosecutor's comments was not to suggest that the defendant was so habitual a drunkard that he was intoxicated even as he sat in court during his trial. Rather, the essence of the comments was that the condition or appearance of the defendant's eyes during trial was irrelevant to the appearance of the defendant's eyes when he was arrested.

Moreover, the comments, although made while the jury was in the courtroom, were directed to the court, not to the jury. "While this fact alone would not excuse an egregious violation of the rule, it is properly taken into consideration as part of the context in which it is made. An indirect comment in argument to the court on a point of law is less serious than a comment in jury summation that asks the jury to infer that the defendant's silence is evidence of guilt." *State* v. *Cobb*, 27 Conn. App. 601, 607, 605 A.2d 1385 (1992).

We also reject the defendant's contention that the prosecutor's comments implicated the exercise of the defendant's fifth amendment right not to testify. "The ultimate test is whether the language used by the prosecutor was clearly of such character that, in the context in which it was used, the jury would naturally and necessarily interpret it to be a comment on the failure of the defendant to testify." Id., 609. In the present case, the prosecutor's objection was prompted by defense counsel's attempt to impeach the testimony of the witness on the basis of a comparison of the defendant's physical condition on the night of his arrest with his condition during trial. In objecting to that line of questioning, the prosecutor merely pointed out that such a comparison was irrelevant to the issue of the defendant's condition

at the time of his arrest. Accordingly, we conclude that the prosecutor's comments were not improper.

## B

Turning to the prosecutor's comment during closing argument, we conclude that such comment also was not improper. We recognize that "[w]hen presenting closing arguments, as in all facets of a criminal trial, the prosecutor, as a representative of the state, has a duty of fairness that exceeds that of other advocates. . . . Nevertheless, [i]n addressing the jury, [c]ounsel must be allowed a generous latitude in argument, as the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel in the heat of argument. . . . Thus, the privilege of counsel in addressing the jury should not be too closely narrowed or unduly hampered . . . . Ultimately, therefore, the proper scope of closing argument lies within the sound discretion of the trial court." (Internal quotation marks omitted.) *State* v. *Gentile*, supra, 75 Conn. App. 852.

In the present case, the sole alleged improper comment made by the prosecutor during closing argument was the statement: "The danger of a drunk driver is that he is going to continue down the road and kill somebody." Following that comment, the defense requested a mistrial, which was denied. At the conclusion of oral argument, the court did, however, give the jury a curative instruction.[3]

---

[3] The court instructed the jury as follows: "You should keep in mind that arguments and statements by the attorneys in final argument, or during the course of this case, are not evidence. Specifically, I'm going to mention that during the state's attorney's initial argument, there was a comment about the danger imposed by drunk driving. Whether drunk driving is dangerous or not is not an issue in this case and is not to be considered by you in determining guilt or innocence of the defendant. Please remember the context that that remark was made in. In any case, you are only to consider the evidence of [the] case. And once again, arguments of counsel are not evidence."

We agree with the state that the prosecutor's comment was not an improper appeal to the emotions and prejudices of the jury, but was offered to support the reason that Ferri did not pursue the defendant into the wooded area after he fled the scene. Moreover, the dangers of drunken driving are within the scope of the common sense and knowledge of the jury. It is well established that arguments that appeal to the common knowledge and experience of the jurors are permissible during closing arguments. See *State* v. *Rolli*, 53 Conn. App. 269, 281, 729 A.2d 245, cert. denied, 249 Conn. 926, 733 A.2d 850 (1999).

After careful review of the whole record, we find no substantial prejudice resulting from the comments of which the defendant complains.

II

We next address the defendant's claim that the court improperly admitted into evidence certain documents that were not properly authenticated. Specifically, the defendant claims that the court improperly allowed into evidence documents purporting to be certified copies of final judgments when the individuals certifying the documents testified that they did not compare the facsimile copies of the documents with the original final judgments and could not testify that the copies accurately reproduced the original final judgments. We disagree.

The following facts are relevant to our disposition of the defendant's claim. In part B of the information, the state charged that the defendant had been convicted of violating § 14-227a on two prior occasions. Specifically, the state charged that the defendant had been convicted in Norwalk on December 23, 1992 (1992 Norwalk conviction), and that he had been convicted in Stamford on January 9, 1997 (1997 Stamford conviction). During trial, the state offered into evidence documents pur-

porting to be certified copies of the judgment files of the defendant's two previous convictions.

The state introduced a facsimile copy of the judgment file of the defendant's 1992 Norwalk conviction through the clerk of the Norwalk court. The witness testified that once a case is disposed of, the information is entered into the computer at the clerk's office and the paper record of the judgment file is then sent to the records center for filing. The witness further testified that his role in compiling the record is to ensure that the proper information regarding the defendant's convictions is entered into the computer.

The file in issue was a facsimile copy sent from the Superior Court records center in Enfield to the Norwalk clerk's office. The clerk testified that on receiving the facsimile transmission, he compared the information in that facsimile to the information contained in the computer records. He further testified that following the disposition of a case, the information concerning the disposition is fed into the computer, and then placed into a special envelope and sent to the records center with the dispositions for that particular date. The information can then be retrieved by the docket number or the date of disposition.

Similarly, a facsimile copy of the judgment file of the defendant's 1997 Stamford conviction was entered into evidence through the deputy clerk of the Stamford judicial district. That witness testified that the maintenance of records at the Stamford courthouse followed essentially the same procedure as that described in the previous testimony regarding the Norwalk records.

The situation presented by the facts of the present case is similar to that in *Federal Deposit Ins. Corp.* v. *Carabetta*, 55 Conn. App. 384, 739 A.2d 311, cert. denied, 251 Conn. 928, 742 A.2d 362 (1999). *Carabetta* involved the introduction into evidence of printouts of certain

computer screens of data. The defendants claimed that the introduction of the paper printouts was improper because the witness testifying as to their authenticity did not testify that the hard copy was identical to what was on the computer screen at the time that the copy was made. We rejected that argument, stating that the transcript contained substantial evidence of the reliability of the computer hardware and software systems, and that "[t]o accept the defendants' invitation would place an impossible burden on the proponent of the use of the business records rule as to records generated by computer." Id., 397.

That same logic applies to the present case. The state of current technology is such that certain records may be quickly and easily copied without the fear of mistaken transcription or scrivener's errors that might accompany the hand copying of such records. The witnesses testified that they compared the information contained in the facsimile copies with the information stored on the computer for each of the dispositions. The witnesses testified that the information matched. Our rules of evidence should not be construed in such a manner so as to vitiate the advantages that technology offers.

There was sufficient testimony as to the reliability of the facsimile copies of the judicial records to warrant their admission. As the court properly noted, the defendant's concern related to the weight of the evidence rather than to its admissibility. We conclude that the facsimile copies were sufficiently authenticated by the clerks of the respective courts to be admitted pursuant to the public records exception to the hearsay rule.

### III

The defendant also claims that the evidence presented at trial was insufficient to find that in 1992 and

1997 he had been found guilty of having violated § 14-227a. We disagree.

The defendant presents three arguments in support of his claim. With respect to the 1997 Stamford conviction, the defendant argues that the state failed to prove beyond a reasonable doubt that he was convicted of violating § 14-227a on January 9, 1997, as charged in the information. The defendant takes exception to an apparent discrepancy between the date of the conviction as charged in the information and the date of the conviction as it appears in the court record. The defendant's argument rests on the fact that the court record introduced as proof of that conviction indicates that he was convicted not on January 9, 1997, but on December 17, 1996.

"Under the applicable standard of review, a conviction based upon a challenged information is valid unless the information is so obviously defective that by no reasonable construction can it be said to charge the offense for which conviction was had." (Internal quotation marks omitted.) *State* v. *Reed*, 55 Conn. App. 170, 175, 740 A.2d 383, cert. denied, 251 Conn. 921, 742 A.2d 361 (1999). The record of the defendant's Stamford conviction indicates that although he was convicted on December 17, 1996, the court suspended the execution of the sentence until January 9, 1997, the date contained in the state's information. The exhibit clearly indicates that January 9, 1997, was the disposition date of the case. The clerk of the court testified that such records are filed under the case docket number and disposition date. Therefore, the date in part B of the information put the defendant on notice of the charge at issue. Accordingly, the defendant's challenge with respect to the sufficiency of the evidence to support the charge that he had been convicted in 1997 must fail.

The defendant also challenges the sufficiency of the evidence to support the charge that he had been con-

victed in 1992. With respect to that conviction, the defendant takes exception to the discrepancy between the prior offense as charged in the state's information and the offense as recorded in the Norwalk court record.[4] Specifically, he argues that the record introduced into evidence indicates that he was convicted of violating General Statutes § 14-227 rather than § 14-227a.

We agree with the state that the reference in the court records to the defendant's conviction of having violated § 14-227, rather than § 14-227a, is nothing more than a scrivener's error. That conclusion is amply supported by the circumstances surrounding that charge. Section 14-227, the statutory predecessor of § 14-227a, was repealed by the legislature in 1963. See General Statutes §§ 14-227 and 14-227a. Logically, the defendant could not have been convicted of violating § 14-227 in 1992. The prevailing rule is that "scrivener's errors should generally be overlooked on review." *D'Amico* v. *Dept. of Correction*, 73 Conn. App. 718, 729, 812 A.2d 17 (2002), cert. denied, 262 Conn. 933, 815 A.2d 132 (2003).

The defendant attempts to support his claim by arguing that the clerk authenticating the document testified that an individual convicted of having violated § 14-227a could not receive the sentence imposed, a $500

---

[4] The defendant also claims that the evidence was insufficient to find that he was the person named in the record of the 1992 conviction. The defendant bases his argument on the fact that the summons related to the 1992 Norwalk conviction showed the operator's date of birth as March 22, 1992, while the defendant's actual date of birth is March 22, 1962. Because the 1992 conviction occurred on December 23, 1992, the recorded birth date is obviously a scrivener's error that the court may disregard on review. See *D'Amico* v. *Dept. of Correction*, 73 Conn. App. 718, 729, 812 A.2d 17 (2002), cert. denied, 262 Conn. 933, 815 A.2d 132 (2003). Notwithstanding the discrepancy regarding the birth dates, the clerk of the court testified that the name, address, license number and race identification in the records of the prior conviction were identical to that of the defendant. We conclude, therefore, that the evidence was sufficient to support the conclusion that the defendant was the person named in the 1992 record of conviction.

fine, a six month sentence of incarceration, execution suspended, and eighteen months probation. The transcript clearly shows, however, that the clerk was testifying that a defendant could not receive that sentence for the lesser offense of driving while impaired in violation of subsection (b) of § 14-227a,[5] thereby rebutting the implication raised by defense counsel during cross-examination.[6] The record establishes that the summons issued in connection with the 1992 Norwalk conviction charged the defendant with violating § 14-227a. The sentence imposed was within the permissible range for violations of subsection (a) of § 14-227a, driving while under the influence of liquor or drug.[7] Accordingly, we find no error.

---

[5] General Statutes (Rev. to 1999) § 14-227a (i), as amended by Public Acts 1999, No. 99-218, and Public Acts 1999, No. 99-255, provides: "Any person who violates subsection (b) of this section shall be fined not more than two hundred dollars."

[6] The following colloquy took place:

"[Defense Counsel]: And going to the next line, we have the same charge on this, which appears on the document; is that correct?

"[The Witness]: That's correct.

"[Defense Counsel]: Which is § 14-227?

"[The Witness]: Yes.

"[Defense Counsel]: It doesn't say which subdivision, does it?

"[The Witness]: No.

"[Defense Counsel]: So, it could be driving while impaired, couldn't it?

"[The Witness]: It could be.

"[Defense Counsel]: All right. Which is not a crime is it? That's an infraction, right?

"[The Witness]: That's correct.

\* \* \*

"[Prosecutor]: . . . [I]f you know, under § 14-227a—

"(Interruption by defense counsel requesting his copy of the exhibit back.)

"[Prosecutor]—can you get a $500 fine, six months [incarceration] execution suspended, eighteen months probation?

"[The Witness]: No.

"[Prosecutor] *So, under an impaired,* that is what type of—

"[The Witness]: It should be a lesser amount, being a lesser conviction." (Emphasis added.)

[7] General Statutes (Rev. to 1999) § 14-227a (h), as amended by Public Acts 1999, No. 99-255, § 1, now (g), provides in relevant part: "Any person who violates any provision of subsection (a) of this section shall . . . (A) be

The judgment is affirmed.

In this opinion the other judges concurred.

fined not less than five hundred dollars nor more than one thousand dollars and (B) be . . . (ii) imprisoned not more than six months, with the execution of such sentence of imprisonment suspended entirely and a period of probation imposed . . . ."